891 P.2d 570

LIBERTY MUTUAL INSURANCE COM-PANY, as subrogee of James Stagner and Daniel Stagner and James Stagner, individually, Plaintiffs–Appellants,

v.

Jesse R. WARREN and Richard Warren, Defendants–Appellees.

No. 15383.

Court of Appeals of New Mexico.

Jan. 31, 1995.

Marc A. Bernstein, Caruso Law Offices, P.C., Albuquerque, for plaintiffs-appellants.

Thomas F. Hooker, Jr., Thomas F. Hooker, Jr. & Associates, Albuquerque, for defendants-appellees.

*OPINION*

HARTZ, Judge.

Liberty Mutual Insurance Company and James Stagner (Plaintiffs) appeal from a judgment dismissing their claims on the ground that their complaint was not timely filed. Liberty Mutual argues that the appli-

cable limitation period for its claim is the six-year period for contract claims, NMSA 1978, § 37–1–3 (Repl.Pamp.1990), rather than the three-year period for personal injury claims, NMSA 1978, § 37–1–8 (Repl.Pamp.1990), because its claim is based upon its subrogation rights under an uninsured-motorist insurance policy. Plaintiffs' joint brief on appeal presents no argument in support of Stagner's individual claim; therefore, we deem Stagner's appeal to be abandoned. *See Alfieri v. Alfieri*, 105 N.M. 373, 375, 733 P.2d 4, 6 (Ct.App.1987). We affirm.

Because the district court dismissed the cause on the pleadings, we accept the allegations of the complaint as true. *See C & H Constr. & Paving v. Foundation Reserve Ins. Co.*, 85 N.M. 374, 376, 512 P.2d 947, 949 (1973). The complaint alleged that Jesse Warren negligently caused an automobile accident on May 11, 1990. Liberty Mutual paid for property damages and uninsured-motorist benefits, except for a deductible paid by Stagner. Richard Warren, the owner of the vehicle driven by Jesse, was alleged to be vicariously liable. The complaint was filed on November 29, 1993. According to Plaintiffs' brief on appeal, on February 11, 1992 Daniel Stagner, who suffered bodily injury in the accident, demanded arbitration pursuant to an uninsured-motorist policy issued by Liberty Mutual, and his claim was settled in March 1992.

Liberty Mutual makes a two-step argument. First, it contends that the limitation period for claims against the insurance carrier under an uninsured-motorist policy is the six-year limitation period for suits upon contracts. Second, it contends that if an insurance carrier has paid its insured under an uninsured-motorist policy and is thereby subrogated to its insured's cause of action against the uninsured motorist, then the limitation period for contracts also applies to its claim against the uninsured motorist.

There is a great deal of support for the first step in Liberty Mutual's argument. The general view among jurisdictions that have considered the issue is that, absent a specific statute governing claims under an uninsured-motorist policy, the applicable statute of limitations is the one governing suits on a contract. *See* A.S. Klein, Annotation, *Automobile Insurance: Time Limitations as to Claims Based on Uninsured Motorist Clause*, 28 A.L.R.3d 580, 582–83 (1969).

Yet, we need not decide that issue. The limitation period for an action on an uninsured-motorist policy does not govern a subrogation claim by the insurance carrier against the uninsured motorist.

In *Fireman's Fund Am. Ins. Cos. v. Phillips, Carter, Reister & Assocs.*, 89 N.M. 7, 9, 546 P.2d 72, 74 (Ct.App.), *cert. denied*, 89 N.M. 5, 546 P.2d 70 (1976), we wrote: "[A]ll defenses available against [the insured] are available against the insurance company, when the insurance company attempts to subrogate [the insured's] claim." One such defense is that the limitation period has expired. In discussing the time limitation for a reimbursement claim under the New Mexico Workers' Compensation statute, *American Gen. Fire & Casualty Co. v. J.T. Constr. Co.*, 106 N.M. 195, 197, 740 P.2d 1179, 1181 (Ct. App.1987), noted the following majority rule:

[C]ourts generally have adhered to the view that the statute of limitations begins to run on a subrogated insurer's action against a third-party tortfeasor at the same time that the statute of limitations would begin to run on an action by the insured, or his personal representative in the event of the death of the insured.... A rationale ... [is] that a subrogated insurer stands in the shoes of its insured, taking no rights other than those that the insured had, and at the same time being subject to all defenses which the third-party tortfeasor might assert against the insured.

(quoting Jane Massey Draper, Annotation, *When Does Statute of Limitations Begin to Run upon an Action by Subrogated Insurer Against Third–Party Tortfeasor*, 91 A.L.R.3d 844, 847 (1979) (alterations in original)). Treatises agree. One states: "Whatever period of limitations is applicable to the insured passes by subrogation to the insurance carrier, who, by reason of such subrogation, is put in place of the party to whose right it is subrogated." 18A George J. Couch, *Couch Cyclopedia of Insurance Law* § 75:38, at 43 (Ronald A. Anderson ed., 2d

431

ed.1983). A second treatise distinguishes subrogation claims from claims for reimbursement or indemnification, stating that in an "action seeking recovery under a theory of subrogation ... the statute of limitations begins to run at the time of the injury to the subrogee." 1 Calvin W. Corman, *Limitation of Actions* § 7.5, at 609 (1991).

Although Liberty Mutual acknowledges this authority, it misinterprets what is being said. It writes:

> [A] subrogated insurer "stands in the shoes of the [insured] *and is entitled to the benefit of all the remedies of the [insured]*...." It follows, therefore, that the subrogated insurer, in prosecuting its action against the tortfeasor, is entitled to the benefit of the identical limitations period which its insured enjoys in prosecuting the underlying uninsured motorists claim. (Citations omitted.)

This last sentence confuses the insured's claim against the insurance carrier with the insured's claim against the tortfeasor. The insurance carrier is entitled to the benefit of the insured's remedies *against the tortfeasor.* In contrast, whatever remedies the insured has *against the insured's own insurance carrier,* it would make no sense for the insurance carrier to step into the insured's shoes to claim those remedies from itself. The insured may have a six-year limitation period for suit against the insurance carrier, but the subrogated insurance carrier is not suing itself. The insurance carrier is suing an alleged tortfeasor and is bound by the same limitation period as the insured would be if the insured were bringing the suit. The alleged tortfeasor is entitled to the same repose under the statute of limitations regardless of whether the person bringing suit is the injured party or that party's subrogated insurance carrier.

Finally, we are not persuaded by Liberty Mutual's argument that great unfairness would result if its insureds have six years to bring a claim on an uninsured-motorist policy while it must bring its subrogation claim within three years of the accident. Other courts have rejected this argument. *See, e.g., Sahloff v. Western Casualty & Sur. Co.,* 45 Wis.2d 60, 171 N.W.2d 914, 918–19 (1969) (insurance carrier could compel insured to take action to preserve its subrogation rights; anyway, subrogation right is not worth much in this context); *American States Ins. Co. v. Williams,* 151 Ind.App. 99, 278 N.E.2d 295, 300–01 (1972) (following *Sahloff*); *Lemrick v. Grinnell Mut. Reinsurance Co.,* 263 N.W.2d 714, 717 (Iowa 1978) (if injustice results, relief is available from legislature); *Selected Risks Ins. Co. v. Dierolf,* 138 N.J.Super. 287, 350 A.2d 526, 531 (Ch. Div.1975) (insured provided notice but insurance carrier sat on its right to require insured to protect carrier's rights). In any event, there was no unfairness here. Liberty Mutual paid the claim on the uninsured-motorist policy in the spring of 1992, leaving it more than a year before expiration of the limitation period.

Because Liberty Mutual's subrogation claim was filed more than three years after its insured's cause of action arose, the district court correctly dismissed the complaint as untimely. The order of dismissal is affirmed.

**IT IS SO ORDERED.**

BLACK and BOSSON, JJ., concur.