963 P.2d 1085

**SAFEWAY INSURANCE COMPANY,**
a foreign corporation, Plaintiff–
Appellant,

v.

Mary COLLINS and John Doe Collins, wife and husband; Rudolph S. Castro and Jane Doe Castro, husband and wife, Defendants–Appellees.

No. 1CA–CV 97–0472.

Court of Appeals of Arizona,
Division 1, Department E.

July 23, 1998.

would otherwise lose a valid subrogation claim to the statute of limitations before the company could obtain the standing required to sue on the claim.

## BACKGROUND

¶ 2 Safeway Insurance Company issued a policy with uninsured motorist coverage to Betty Monter ("the insured"). On December 21, 1994, the insured was involved in a car accident with appellee Rudolph Castro, who was driving a vehicle owned by appellee Mary Collins. Neither Castro nor Collins ("the tortfeasors") had any insurance. The insured has indicated an intention to file an uninsured motorist claim on her policy with Safeway but, according to Safeway, she is delaying in order to assess the full extent of her injuries. Safeway expects to pay the insured for the claim, but cannot say when payment will occur or in what amount.

¶ 3 On April 11, 1996, Safeway filed suit against the tortfeasors, alleging negligence against the driver and negligent entrustment against the owner. Safeway did not request a specific dollar amount for damages but instead asked for:

> ... a sum, undetermined at this time, as and for the amount to be paid out by [Safeway to its insured] under the uninsured motorist clause.

Safeway effected service upon both tortfeasors and, when neither answered or otherwise appeared, obtained the clerk's entry of default against each of them.[1] Safeway did not seek judgment, however, because it had made no payment under the policy to its insured.

¶ 4 The action eventually was placed on the trial court's inactive calendar where it came up in due course for dismissal for lack of prosecution. Safeway moved to continue the matter on the inactive calendar, citing as cause therefor that it would otherwise lose its subrogation claim to the statute of limitations.

¶ 5 The trial court declined to continue the matter, but did not address whether Safeway had cited sufficient cause for a continuance under Rule V(e)(2), Uniform Rules

Crosby & Gladner, P.C. by Marc S. Gladner, Phoenix, for Plaintiff–Appellant.

Mary Collins, Mesa, Defendant–Appellee (No Appearance).

Rudolph S. Castro, Mesa, Defendant–Appellee (No Appearance).

SULT, Presiding Judge.

¶ 1 In this appeal we are asked to provide a remedy for an insurance company that

1. Neither of the tortfeasors has appeared in this appeal proceeding.

of Practice. Instead, the trial court *sua sponte* applied the uninsured motorist statute, Arizona Revised Statues Annotated ("A.R.S.") § 20–259.01(I) (Supp.1997), which allows subrogation only to "[i]nsurers who make payments for damages to insureds for uninsured motorist coverage." Based on this statute, the trial court found the action was premature and dismissed it, stating as follows:

> Until such time as [Safeway] has paid uninsured motorist benefits to its insured, it has not suffered a loss. Furthermore, there is no right to subrogation of the insured's claim against Defendant until the uninsured motorist benefit bills have been paid.

Safeway appeals this order and the trial court's subsequent denial of its motion to reconsider.

## ANALYSIS

¶ 6 The issues we address in this opinion are best understood by a review of the context in which· they arise. Safeway's insured had two years from the date of the accident to sue the tortfeasors. A.R.S. § 12–542 (1992). She chose not to do so, however, because they unquestionably were uninsured. By contrast, the insured has six years from the date of the accident in which to make an uninsured motorist claim under her policy. *See Blutreich v. Liberty Mutual Insurance Co.,* 170 Ariz. 541, 543, 826 P.2d 1167, 1169 (App.1991). As is her right, the insured has chosen not to make a policy claim within the two-year period dating from the accident. According to Safeway, there is no question that it will eventually have to pay its insured some amount under the policy.

¶ 7 Once Safeway pays its insured under the uninsured motorist provision, it is subrogated to her tort claim against the tortfeasors and may pursue that claim against them to the extent of the payment made to the insured under the policy. *See A.R.S.* § 20–259.01(I). However, Safeway's right to subrogation does not attach, at least for purposes of recovering from the tortfeasors, until it actually makes payment to the insured. *See Progressive Specialty Insurance Co. v. Farmers Insurance Co.,* 143 Ariz. 547, 548,

694 P.2d 835, 836 (App.1985). Moreover, Safeway takes the insured's claim subject to all defenses the tortfeasors would have against the insured, including the statute of limitations applicable to the claim. *See Preferred Risk Mutual Insurance Co. v. Vargas,* 157 Ariz. 17, 20, 754 P.2d 346, 349 (App.1988)." This limitations period is measured, not from the time Safeway pays the insured, but from the time the insured's claim against the tortfeasors accrued, namely the date of the accident. *Id.* This gives rise to Safeway's predicament—how to avoid losing its subrogation claim to the two-year statute of limitations applicable to the insured's claim against the tortfeasors when the insured has exercised her prerogative not to make a claim under the policy within that period.

¶ 8 Safeway's answer in the trial court was to attempt to employ the mechanism of that court's inactive calendar until such time as its claim was ripe. Faced with the expiration of the two-year statute, Safeway filed the action against the tortfeasors, obtained default when they did not appear, and sought to continue the matter on the trial court's inactive calendar until such time as it was able to prosecute the subrogation claim to judgment as the real party in interest.

¶ 9 The trial court's refusal to countenance this procedure and its dismissal instead for prematurity raises these issues: 1) Was the trial court's finding of prematurity correct? 2) Was dismissal the proper remedy? 3) Is there an alternative to dismissal that would preserve Safeway's claim? Because the trial court resolved no issues of fact and its decision was purely one of law, our review of these issues is *de novo. See Owens·v. City of Phoenix,* 180 Ariz. 402, 405, 884 P.2d 1100, 1103 (App.1994).

## 1. Safeway's Claim—Ripe or Premature?

¶ 10 Safeway does not dispute that under the present state of the law in Arizona, an insurer who is subrogated under A.R.S. section 20–259.01(I) does not have a new and independent claim against the tortfeasor, but takes the existing claim of the insured. *Vargas,* 157 Ariz. at 20, 754 P.2d at 349. Moreover, Safeway does not dispute that under

present law, subrogation does not occur under section 20–259.01(I) until it actually makes payment. Thus, Safeway concedes, if present law is applied, the trial court was correct in finding that Safeway's action was premature.

¶ 11  In the trial court, Safeway argued that it should be permitted to use the trial court's inactive calendar to accommodate the problem of prematurity. On appeal, it has abandoned that argument and now urges us to judicially change the law of subrogation and find that the claim it acquires by payment under an uninsured motorist provision is a new claim, one created by section 20–259.01(I) itself. Safeway reasons that. because it was impossible in Arizona to assign a personal injury claim via subrogation prior to enactment of section 20–259.01(I), *see Allstate Insurance Co. v. Druke,* 118 Ariz. 301, 303–04, 576 P.2d 489, 491–92 (1978), the statute itself creates the claim. Thus, the applicable statute of limitations would be the one-year period provided by A.R.S. section 12–541(5) (Supp.1997) for actions founded upon a liability created by statute. More importantly, that limitation period would not begin to run until Safeway actually makes payment. Under this analysis, the trial court's dismissal would stand but Safeway could refile without penalty within one year after making payment to its insured.

¶ 12  Safeway acknowledges that this argument is the same one we rejected in *Vargas.* Safeway further acknowledges that our adoption of its analysis would require that we decline to follow *Vargas.* Safeway offers as justification only that such a result would be fair.

█ ¶ 13  We decline Safeway's request. *Vargas* is a well-reasoned decision which clearly shows why section 20–259.01(I) is not subject to the interpretation Safeway seeks. *Vargas* is also in accord with the weight of authority in this country that subrogation upon payment under an uninsured motorist policy provision amounts to nothing more than assignment of an existing claim, subject to the statute of limitations applicable to that claim. *Vargas,* 157 Ariz. at 19–20, 754 P.2d at 348–49; *see also* 18A Couch on Insurance 2d § 75:38, at 43 (Rev. ed.1983).

¶ 14  More importantly, Safeway does not address any of the potential ramifications of a decision departing from the result in *Vargas.* For example, to the extent that subjecting an insurer's subrogation claim to the two-year statute covering personal injury actions induces insurers to settle more quickly with their policyholders, such inducement would be removed by adopting Safeway's proposed interpretation. This could encourage insurers to dawdle in negotiating settlement, secure in the knowledge that their subrogation right will not accrue until payment is made. There is also the. consideration that the tortfeasor, who is presently protected with a two-year statute, would be left dangling for an additional four years. While the tortfeasor's failure to purchase insurance might justify this consequence, as Safeway suggests, this raises a question of the policies underlying statutes of limitation and therefore is properly addressed to the Arizona legislature. As yet, that body has not seen fit to make a distinction between insured and uninsured tortfeasors in applying a statute of limitations.

█ ¶ 15  We also note that *Vargas* has been on the books for ten years and in the interim the Arizona legislature has not changed the result in that case. We therefore presume that the legislature is satisfied with the interpretation of section 20–259.01(I) by the *Vargas* court and has no wish to make the distinction sought by Safeway. *See Madrigal v. Industrial Comm'n,* 69 Ariz. 138, 144, 210 P.2d 967, 971 (1949) (holding that failure of legislature to change law for a long period following judicial construction of the law amounts to legislative approval and ratification). In light of this apparent legislative accord, as well as the foreseeable ramifications of adopting Safeway's proposal, we decline to depart from *Vargas.* We therefore conclude that the trial court was correct in finding that Safeway's subrogation claim was not ripe for adjudication.

**2.  The Trial Court's Dismissal Order**

¶ 16  The question before the trial court on Safeway's motion was whether Safeway

had demonstrated the "good cause" required by Rule V(e)(2), Uniform Rules of Practice, to justify continuing the matter on the trial court's inactive calendar. Without question, the trial court had the authority under this rule to dismiss the action if it found that Safeway had failed to demonstrate such cause. *Jepson v. New,* 164 Ariz. 265, 269, 792 P.2d 728, 732 (1990). However, the trial court did not dismiss on this basis but rather on the basis that the claim was premature.

¶ 17 The trial court did not specify why dismissal of Safeway's claim was the proper remedy. It apparently concluded, however, that prematurity for any reason required such a result. It is therefore necessary to determine whether the trial court was correct in this conclusion.

¶ 18 In analyzing the prematurity of Safeway's claim, we distinguish between the cause of action and the party filing it. The cause of action is the insured's claim against the tortfeasors for personal injuries arising out of the accident. *See Vargas,* 157 Ariz. at 20, 754 P.2d at 349. The cause of action accrued on the date of the accident and was ripe for adjudication when this lawsuit was filed. *Id.*

¶ 19 However, the party filing the action was Safeway, the prospective subrogee of the insured. But Safeway was not a real party in interest at the time it filed because it had made no payment to the insured. *See Hamman–McFarland Lumber Co. v. Arizona Equipment Rental Co.,* 16 Ariz.App. 188, 190, 492 P.2d 437, 439 (1972) (insurer is real party in interest when it pays insured and can bring action in its own name); *see also St. Paul Fire & Marine Insurance Co. v. Glassing,* 269 Mont. 76, 887 P.2d 218, 220 (1994) (noting difference between date of accrual of cause of action and date of attachment of subrogation right).

¶ 20 The defect, then, was not in the cause of action asserted but in the party asserting it. This type of defect is addressed by Rule 17(a), Arizona Rules of Civil Procedure, which requires that "[e]very action shall be prosecuted in the name of the real party in interest." The remedy for a failure to comply with the rule, however, is not an immediate dismissal by the trial court. Rather, Rule 17(a) itself provides that

[n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest.

■■ ¶ 21 The rule requires that an objection first be made before the failure to prosecute by the real party in interest is at issue. Moreover, the lack of capacity to sue because the claimant is not the real party in interest is not a jurisdictional impediment and can be waived if not timely objected to. *Lake Havasu Community Hospital, Inc. v. Arizona Title Insurance and Trust Co.,* 141 Ariz. 363, 370, 687 P.2d 371, 378 (App.1984). In this case, there was no objection because the tortfeasors had defaulted and had therefore clearly waived any objection to the defect.

■ ¶ 22 Even if we assume a trial court has the right to raise the objection on its own motion, the rule still requires the court to allow the claimant the opportunity to cure the defect before dismissing. *See Shetterly v. Raymark Industries, Inc.,* 117 F.3d 776, 784–85 (4th Cir.1997) (holding that where motion to dismiss was made by judge, not defendant, plaintiffs still had right to cure real party in interest defect before dismissal). Here, the trial court did not allow Safeway the opportunity to seek joinder of the insured before summarily dismissing the action. We conclude that in doing so, the trial court erred, and remand is necessary to permit Safeway the opportunity under Rule 17(a) to take the steps necessary to properly prosecute this claim.

### 3. Alternative Remedies Upon Remand

¶ 23 If Safeway is to preserve its subrogation claim, it must involve its insured in this proceeding, unless, by the time this matter reaches the trial court again, Safeway has fully paid under the uninsured motorist benefit provision. The question then becomes upon what basis and employing what procedure can Safeway bring the insured into this action.

¶ 24 Safeway has not favored us with the actual insurance policy involved in this case, but it likely contains the standard provision imposing a duty to cooperate upon the insured. We have not found a case directly holding that such a clause would permit an insurer to require an insured to join in an action against the tortfeasor initiated by the insurer. Most of the case law dealing with this provision arises in the context of the insured's duty to assist the insurer in defending a claim against the insured.

¶ 25 There is, however, respectable commentary to the effect that such a remedy is appropriate. For example, Couch states:

> The insurer may require that the insured bring suit against the tortfeasor and to cooperate with the UM carrier or assign the claim to the carrier. Both the insured and the insurer may join together in a suit against the tortfeasor; however, in such a situation the insured maintains control over the action.

12A Couch on Insurance § 45:655, at 223 (Rev. ed.1981) (citation omitted). Appleman agrees:

> Where subrogation rights exist, the insurer may compel the insured to preserve them, even to filing suit, if necessary.

8D John A. Appleman and Jean Appleman, Insurance Law and Practice § 5128, at 152 (1981) (citations omitted). *See also Rutgers Casualty Insurance Co. v. Vassas,* 139 N.J. 163, 652 A.2d 162 (1995) (stating in dictum that an insured had "a duty to cooperate with [its insurer] in defense *or prosecution* of any action by or against the tortfeasor") (emphasis added). We see no reason why the standard cooperation clause should not be construed to require the insured's joinder under Rule 19(a), Arizona Rules of Civil Procedure, as the real party in interest in an action against the tortfeasor, if such joinder is necessary to protect the insurer's subrogation rights. *Cf. Connolly v. Great Basin Insurance Co.,* 6 Ariz.App. 280, 286–87 & n. 2, 431 P.2d 921, 927–28 & n. 2 (1967) (stating that it is appropriate to use Rule 19 to join injured tort claimant in declaratory judgment action between insured and insurer).

¶ 26 Even if a cooperation clause is not available or is somehow inapplicable, Rule 19(a) appears to provide not only a mechanism but also an additional justification for bringing the insured into this action:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) *in that person's absence complete relief cannot be accorded among those already parties* ....

(Emphasis added.). It is clear that without the insured's presence in this case as a real party in interest, no relief will be available to Safeway. Therefore, the insured's joinder under this provision appears appropriate and will give the trial court the authority to proceed with the case. *Cf. Tri–City Property Management Services, Inc. v. Research Products Corp.,* 149 Ariz. 596, 598, 721 P.2d 144, 146 (App.1986) (holding Rule 19 joinder of insurer in insured's action against tortfeasor was not required even though insurer had paid partial benefits under policy, where insurer was protected by existing release and subrogation agreement with insured, thereby implying joinder would be proper absent protection afforded by agreement).[2]

¶ 27 We acknowledge a question of the applicability of the two-year statute of limitations to the insured once she is added in this matter as a co-claimant against the tortfeasors. An initial answer is provided in Rule 17(a), which addresses the status of a real party in interest following joinder:

> [S]uch ratification, joinder or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

Under a literal reading of this provision, the insured would be held to have filed the action at the same time as Safeway did, which was well within the two-year statute. Thus, the

---

**2.** Rule 19(a) permits joinder of the absent party even over that party's objection and the absent party can be joined as an involuntary plaintiff. We emphasize, however, that we are not adjudicating the propriety of the insured's joinder against any objection the insured may have. Such objections may still be made by the insured and the trial court must determine whether the insured should be joined under Rule 19.

statute would not apply to her status as a co-claimant. *See* 3A J. Moore et al., **Moore's Federal Practice**, ¶ 17.15–1, at pp. 17–136 to 17–137 (2d ed.1989) (footnotes omitted) (seeming to advocate a literal reading of this provision, noting that "its main thrust is to allow a correction in parties after the statute of limitations has run, despite the valid objection that the original action was not brought by the real party in interest").

¶ 28    Most courts that have construed this provision, however, have not given it a literal effect. *See* 6A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1555, at 415–16 (1990). Rather, they have borrowed from the policies underlying the federal counterpart to Rule 15(c), Arizona Rules of Civil Procedure, (dealing with relation back when a new defendant is added) to limit the relation-back effect when adding a real party in interest as a plaintiff. *See, e.g., Unilever Raw Materials Ltd. v. M/T Stolt Boel,* 77 F.R.D. 384, 389 (S.D.N.Y.1977) (noting that "[b]y engrafting the equitable substance of Rule 17(a) onto the procedural directives of Rule 15(c), it is apparent that the two harmonize completely and offer a reasonable route to resolution"); *Wadsworth v. United States Postal Service,* 511 F.2d 64, 66–67 (7th Cir.1975) (holding that addition of subrogee-insurer as a plaintiff real party in interest to subrogor-insured's claim against government related back under Rules 15(c) and 17(a) so that running of limitations period under Federal Tort Claims Act did not bar insurer's portion of claim, citing lack of prejudice to the government). Professors Wright and Miller summarize the limitations as follows:

> [T]he rule should be applied only to cases in which substitution of the real party in interest is necessary to avoid injustice.

Wright, Miller & Kane, Federal Practice and Procedure § 1555, at 415. *See also* Ariz. R. Civ. P. 17(a) Committee Note (stating that "[t]he provision is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made").

¶ 29    In this case, several points favoring relation back are immediately apparent. First is the fact that the cause of action is precisely the same whether prosecuted by the insured, the insurer, or both. *See Slaughter v. Southern Talc Co.,* 949 F.2d 167, 174–75 (5th Cir.1991) (holding that amended complaint substituting widows of deceased workers who had suffered asbestos-related injuries "unquestionably arose out of the same injury" as alleged in original pleading and thus related back under Rule 15(c)). Second is the lack of any prejudice to the tortfeasors who have already chosen not to defend against this cause of action. *See id.* Third is the understandable difficulty Safeway had in trying to craft a remedy to save its subrogation claim in the context of differing statutes of limitation, a problem repeatedly faced by insurers across the country. *See, e.g., Glassing,* 887 P.2d at 220–21; *Liberty Mutual Insurance Co. v. Warren,* 119 N.M. 429, 891 P.2d 570, 572 (N.M.App. 1995); *Sahloff v. Western Casualty & Surety Co.,* 45 Wis.2d 60, 171 N.W.2d 914, 918–19 (1969).

¶ 30    When we consider these factors in the particular circumstances of this case, we conclude justice requires that Safeway's addition of the insured as co-claimant relate back to the filing of Safeway's original suit. Because this filing occurred within the two-year statute of limitations, the insured's claim would not be barred.

## CONCLUSION

¶ 31    We affirm the trial court's finding that Safeway's claim was premature, but vacate the trial court's order of dismissal based thereon. We remand this matter to the trial court for further proceedings consistent with this opinion.

GARBARINO and KLEINSCHMIDT, JJ., concur.