616 P.2d 1123

Pedro PRIETO et al.,
Plaintiffs–Appellees,

v.

HOME EDUCATION LIVELIHOOD PROGRAM (H.E.L.P), Defendant and Third–Party Plaintiff–Appellant,

v.

KEETH GAS COMPANY and Artesia Plumbing and Heating Company, Third–Party Defendants–Appellants.

No. 4455.

Court of Appeals of New Mexico.

Aug. 12, 1980.

John M. Wells, Amanda J. Ashford, Ruud & Wells, P.A., Albuquerque, for third–party defendants–appellants.

Carl H. Esbeck, Rodey, Dickason, Sloan, Akin & Robb, P. A., Albuquerque, for defendant and third–party plaintiff–appellant, H.E.L.P.

Richard E. Ransom, P. A., William G. Gilstrap, Smith, Ransom & Gilstrap, Albuquerque, for plaintiffs–appellees.

## OPINION

WALTERS, Judge.

The sole issue in this interlocutory appeal is whether the New Mexico statutes require dismissal of a suit if plaintiff fails to immediately serve the complaint upon issuance of process. We hold that even though service could have been accomplished earlier, our statutes do not require dismissal when delay in service alone is the basis of the motion to dismiss.

Plaintiff filed his complaint on November 8, 1977, the last day before the statute of limitations on his claim would have run. Service was not made on defendant (H.E.L.P.) until almost three months later. During the same period, there was pending a federal Tort Claims Act lawsuit, brought by this plaintiff against the United States of America and alleging H.E.L.P.'s tortious acts as the basis of the action. The federal suit was dismissed on February 2, 1979, more than a year after H.E.L.P. was served in this suit, upon plaintiff's agreement that H.E.L.P. was not an agency or instrumentality of the U.S. Government.

H.E.L.P. answered the complaint in this case on March 14, 1978 and its third party complaint was filed on April 26, 1978. The third party defendant asserted a statute of limitations defense in its answer of May 24, 1978, and on *October 31, 1979* plaintiff moved to amend its March 1978 answer to raise the same affirmative defense. The trial court denied the defense on grounds that the statute of limitations issue was one for the jury, at the same time opening the way for an interlocutory appeal on that issue by designating it "a controlling question of law as to which there is substantial ground for difference of opinion. . . ."

The application to this Court for an interlocutory appeal framed the issue as follows:

Whether § 37–1–13, N.M.S.A. 1978, requires intent that summons and complaint be served immediately and with due diligence in order to toll the statute of limitations; conversely, where the purpose of filing a complaint is to stop the running of the statute, but service is not effected, the statute of limitations is not tolled.

Upon receiving the application, we remanded the matter to the trial court for an evidentiary hearing on the delay in service of process and to make a decision on the issue of intent, postponing appellate briefs until after the hearing. The trial court did so and, in its ruling from the bench, said:

After reading the statute that was referred to in the original motion which came to the Court's attention–I think it was 37–1–13–and comparing that with the lawsuit as it has been unfolding before me over the past several months, I find that the term "intent" in this case would be legally tantamount to the intent to abandon. That's the only connotation that I can give to the word "intent" under these particular circumstances. Now, that is not legally defining that term but that is the way I understand it in the connotation of this particular lawsuit. I cannot assume for a moment that it was the intent of any attorney to wait until three months or four months after the date of the filing to file a lawsuit, know-ing the status of the statute and intending then to abandon his lawsuit because it was his intent to serve process three or four months afterwards. The mere fact that the plaintiff in this case filed his lawsuit on the last day permissible under the statute of limitations, 37–1–8, is an intent on his part to preserve the lawsuit and not permit it to be abandoned. If in the event there was a "goof" as you call it, or a mistake on the part of the plaintiffs, that does not in any way proscribe the intent to abandon the lawsuit or the intent to serve process after the date on which the statute of limitations would have run.

I am going to find there is no intent to abandon, no intent to serve process after that particular date. That will be certified to the Court of Appeals and allow the Court of Appeals, based upon the evidence, to either overturn me on the basis of the absence of testimony or sufficient evidence, or to interpret the statute which is before them at the present time.

I have not considered these documents, plaintiffs' 1 through 9, except to state that from the information that has been brought to my attention in this lawsuit there was a corresponding lawsuit in the federal court that was argued before me previously, and there was no intent to abandon this particular lawsuit.

All of the parties have briefed only the meaning of § 37–1–13. That statute reads:

The filing in the proper clerk's office of the petition, declaration, bill or affidavit, upon the filing of which process is authorized by law to be issued, with intent that process shall issue immediately thereupon, which intent shall be presumed, unless the contrary appear, shall be deemed a commencement of the action.

■ New Mexico has not previously construed this statute or its effect upon the statutes of limitations contained in Chapter 37, N.M.S.A. 1978. A distinct split of authority exists on the meaning of "issuance of process." *See* annotation at 27 A.L.R.2d 236, *et seq.* Nobody disputes in this case that the complaint was timely filed, *see*

§ 37–1–8, N.M.S.A.1978. Nor is there any question that the summons was not issued by the court clerk on the same date the suit was filed. If § 37–1–13's reference to issuance of process mean issuance of the summons (and *State ex rel. Dresden v. District Court*, 45 N.M. 119, 112 P.2d 506 (1941), accords to it that meaning),[1] then, under that statute, the statute of limitations is tolled when the complaint is filed and the summons issued; and delay in service, without more, cannot reinstate the bar of the statute of limitations. This suit was filed within the limitation period; the statute was tolled.

■ Section 37–1–13, when read with Rules 3 and 4, N.M.R.Civ.P., N.M.S.A. 1978, is clearly an anachronism. Section 37–1–13 is entitled "When action deemed commenced," and Rule 3 is entitled "Commencement of action." Rule 4, designated "Process," is totally concerned with the form of, and procedures relating to, the summons, and how service of the summons and complaint shall be made. Rules 3 and 4 are later rules of procedure promulgated by the Supreme Court and, if there were any conflict, would supersede § 37–1–13. *Ammerman v. Hubbard Broadcasting, Inc.*, 89 N.M. 307, 551 P.2d 1354 (1976). But we need not find a conflict between the Rules and § 37–1–13. We read § 37–1–13 to prohibit any deliberate attempt by plaintiff to prevent issuance of the summons once the complaint has been filed. The later Rule 4(a), however, takes that discretion from the plaintiff, if it ever existed, by requiring that the clerk, "[u]pon the filing of the complaint . . . shall forthwith issue a summons and deliver it for service." The plaintiff's *intent* regarding issuance of the summons cannot affect the clerk's duty to do so "forthwith" once the complaint is filed. There is no statute or rule which imposes a deadline on the *service* of summons and, indeed, Rule 4(j) contemplates that the clerk shall "issue other process" when "any process has not been returned, or has been returned without service, or has been improperly served."

■ Considering the controlling influence of Rule 4 and the antiquity of § 37–1–13,[2] we think the language in § 37–1–13, "with intent that process shall issue immediately thereupon, which intent shall be presumed, unless the contrary appear," has become superfluous and superseded by Rules 3 and 4(a) insofar as it refers to the plaintiff's intent. If those words have any meaning at all, and recognizing that the trial court was directed to decide the issue of intent, we do not think the interpretation given them by the trial court can be considered clearly erroneous. In our view, however, § 37–1–13 has no further usefulness in our statutes, because Rules 3 and 4 cover the subject and they are, therefore, exclusive. *Ammerman, supra.*

We do not disagree with the result reached in *Murphy v. Citizens Bank of Clovis*, 244 F.2d 511 (10th Cir. 1957), but the facts of laches or wilful delay in that case as an affirmative defense are substantially more egregious than those we consider here. In determining what "issue of process" in a federal suit means, the reviewing court in *Murphy* equated it with "service of process," which we decline to do. Even so, plaintiff there, contrary to the specific instructions of the court clerk, deliberately waited *thirteen months* to turn the summons and complaint over to the United States Marshall for service. That sort of evidence does not appear in the instant record. We know only that whereas the person who did make service in this case usually served process within a few days of receiving it, he could not recall when, from whom, or under what circumstances he received these papers, or whether they had at

1. *But see* N.M.R.Civ.P. 4(*l*), which reads: "Wherever the terms 'summons,' 'process,' 'service of process' or similar terms are used, such shall include the summons, complaint and any other papers required to be served. [As amended effective October 1, 1969, and October 1, 1979]." Under the Rules of Civil Procedure, *issuance* of process must refer only to the summons, however, since the clerk does not "issue" the complaint.

2. Originally enacted as Laws 1880, ch. 5, § 8, and unchanged through the 1978 compilation.

any time been mislaid or misplaced before they were served.

We read *Murphy, supra,* to hold that the intentional delay by plaintiff was a showing of "lack of reasonable diligence" and, *on that ground,* the complaint was properly dismissed. The *Murphy* decision acknowledges that "[t]he act of filing a complaint conditionally suspends the statute of limitations and it is not necessary *to serve* process before the expiration of the limitation period [our emphasis]." 244 F.2d at 512.

■■ We hold that the statute is tolled by the timely filing of the complaint but that the trial court, in the exercise of its inherent power and in its discretion, independent of statute, may dismiss a case for failure to prosecute when it is satisfied that plaintiff has not applied due diligence in the prosecution of his suit. *See Baker v. Sojka,* 74 N.M. 587, 396 P.2d 195 (1964). The evidentiary record fails to conclusively establish laches or wilful delay; the trial court did not find a lack of diligence in obtaining service, and the court's remarks may be understood to find no fault in plaintiff for the lapse of time between filing the complaint and effecting service. It was within the court's power and discretion to so find.

We therefore affirm the decision of the trial court and remand the matter for further proceedings.

LOPEZ, J., concurs.

SUTIN, J., specially concurs.

SUTIN, Judge (specially concurring).

I specially concur.

*Ammerman v. Hubbard Broadcasting, Inc.,* 89 N.M. 307, 312, 551 P.2d 1354 (1976) holds "that under our Constitution the Legislature lacks power to prescribe by statute rules of evidence and procedure . . .." Section 37–1–13 [when action deemed commenced] is procedural and therefore invalid. Rule 3 of the Rules of Civil Procedure is controlling. It reads:

A civil action is commenced by filing a complaint with the court.

Plaintiff's complaint was filed within the limitation period and tolled the statute. The issue of delay in service of process from the date of filing the complaint to the date of service and the decision of the trial court on the issue of intent under § 37–1–13 are irrelevant to this appeal.

On January 15, 1980, two members of this Court erroneously remanded this case to the district court to hold a hearing and make a decision on the issue of intent. A hearing was held and a transcript filed in this Court and briefing time for briefs to be filed.

The costs expended for the hearing, including attorney fees, should not be assessed against the parties to this interlocutory appeal. The cost bills should be submitted to the Clerk of this Court and paid by this Court out of any funds available.