■ In the Matter of AETNA CASUALTY AND SURETY COMPANY, Respondent, v DAVID CROWN, Appellant.—In a proceeding pursuant to CPLR article 75 to permanently stay arbitration of a claim for underinsured motorist benefits, the appeal is from an order of the Supreme Court, Nassau County (Levitt, J.), dated April 27, 1990, which granted the application.

Ordered that the order is reversed, on the law, with costs, and the matter is remitted to the Supreme Court, Nassau County, for a hearing on the issue of whether the petitioner consented to the appellant's settlement of his claim against the tort-feasor, and a new determination; pending the hearing, arbitration is temporarily stayed.

On October 5, 1988, the appellant David Crown was struck by a vehicle driven by Pedro Perez as he walked across an intersection. He suffered a broken pelvis and two broken legs. Perez had an automobile liability policy issued by Royal Insurance Company (hereinafter Royal) which provided bodily injury liability coverage in the amount of $10,000. Crown had a policy with the petitioner Aetna Casualty and Insurance Company (hereinafter Aetna) in effect on the date of the accident which provided underinsurance coverage of up to $200,000. Crown notified Aetna of the accident on October 6, 1988, and in January 1989 his attorney informed Aetna that Crown would be seeking uninsured and/or underinsured motorist benefits under his policy. In response, Aetna's claims representative requested medical information.

In February 1989 Royal wrote to Crown's attorney offering to settle Crown's claim for the policy limit of $10,000. A copy of the letter from Royal was forwarded to Aetna's claims representative on February 27, 1989. In a letter dated March 20, 1989, the claims representative requested Crown's hospital records but did not mention Royal's offer of a settlement. According to Crown's attorney, the proposed settlement with Royal was discussed after Crown's medical records were supplied to Aetna in April 1989 and the claims representative did not object to the settlement or to the issuance of a general

release. On May 18, 1989, Crown settled his claim against Perez for $10,000 and signed a general release.

According to Crown's attorney, settlement discussions continued thereafter with Aetna with respect to the underinsurance claim, and by letter dated September 8, 1989, the claims representative indicated that Aetna was still investigating the claim. Later that month, Crown served Aetna with a demand for arbitration of his claim for underinsurance benefits. Aetna then commenced this proceeding to permanently stay arbitration on the ground that Crown had settled his claim against Perez without its consent. Under the terms of Crown's policy, Aetna would not provide underinsured motorist coverage for bodily injuries if the claimant "settles the bodily injury claim without our consent". In response, Crown alleged that Aetna consented to his settlement with Perez by its conduct and its silence, when informed of his intention to settle. The court permanently stayed arbitration on the ground that Crown failed to comply with the consent provision of his policy.

The motion papers present an issue of fact as to whether Aetna consented to Crown's settlement with Perez. Since the policy did not require Crown to obtain Aetna's written consent, the question is whether the claims representative's silence when informed of his intention to settle should be deemed an acquiescence. "When a party is under a duty to speak, or when his failure to speak is inconsistent with honest dealings and misleads another, then his silence may be deemed to be acquiescence" (More v New York Bowery Fire Ins. Co., 130 NY 537, 545; see also, Russell v Raynes Assocs. Ltd. Partnership, 166 AD2d 6, 15; Club Chain v Christopher & Seventh Gourmet, 74 AD2d 277, 284). Aetna was required to act in good faith in its dealings with its insured. We find that the allegations made in response to Aetna's motion create a factual issue as to whether the claims representative was in fact informed of the impending settlement with Perez and misled Crown by remaining silent until after the general release was signed. Accordingly, a hearing on this issue is required. Harwood, J. P., O'Brien and Ritter, JJ., concur.

Balletta, J., dissents and votes to affirm, with the following memorandum: The relevant policy provisions state that underinsured motorist coverage will not be provided where the insured "settles the bodily injury claim without [the insurer's] consent". In addition, the policy requires that the insured "[d]o nothing after loss to prejudice [the insurer's] rights".

The appellant asserts that the petitioner's claim representa-

tive made no pertinent reply when his attorney informed her that his claim against the tort-feasor "was going to be settled" and that "releases were going to be sent". I do not believe that mere silence in the face of such pronouncements could reasonably be presumed to constitute consent, nor should it be legally effective as such (see, *More v New York Bowery Fire Ins. Co.,* 130 NY 537, 545; *Matter of Albrecht Chem. Co. [Anderson Trading Corp.],* 298 NY 437, 440; *Club Chain v Christopher & Seventh Gourmet,* 74 AD2d 277, 284; *see also,* Restatement [Second] of Contracts § 69).

Under the circumstances, where the appellant settled his claim against the offending motorist without obtaining the insurer's consent or preserving its right of subrogation, the court properly stayed arbitration (see, *Weinberg v Transamerica Ins. Co.,* 62 NY2d 379; *Matter of State Farm Mut. Auto. Ins. Co. v Taglianetti,* 122 AD2d 40; *Matter of State Farm Mut. Ins. Co. v Donath,* 164 AD2d 889).