2007-NMCA-161

173 P.3d 35

**Mary SALAS, Plaintiff–Appellant,**

v.

**MOUNTAIN STATES MUTUAL CASUALTY COMPANY, Defendant–Appellee.**

No. 26,385.

Court of Appeals of New Mexico.

Oct. 10, 2007.

Certiorari Granted, No. 30,735, Dec. 4, 2007.

Schneider–Cook Law Firm, P.C., Angie Schneider–Cook, Ruidoso, NM, for Appellant.

Atwood, Malone, Turner & Sabin, P.A., Robert E. Sabin, Cord D. Borner, Roswell, NM, for Appellee.

## OPINION

BUSTAMANTE, Judge.

{1} Plaintiff Mary Salas filed a complaint for breach of contract after Mountain States Mutual refused to provide her underinsured motorist coverage under a policy Mountain States had issued to Plaintiff's son and daughter-in-law. Mountain States requested summary judgment arguing that Plaintiff had failed to comply with the consent-to-settle provisions of the policy. The district court apparently agreed, granted summary judgment in favor of Mountain States and dismissed the complaint. Plaintiff appeals and we reverse.

## A. BACKGROUND

{2} On March 2, 2000, Plaintiff was a passenger in her daughter-in-law's car and injured when an underinsured motorist rear-ended them. The underinsured motorist was insured under a liability policy issued by Farmers Insurance Company of Arizona (Farmers) with a $30,000 limit. The vehicle Plaintiff occupied was insured with both medical pay and UIM coverage by Mountain States Mutual Casualty Company (Mountain States). Because she was a passenger in the Mountain States insured vehicle, Plaintiff became an insured and was entitled to both coverages.

{3} Plaintiff made a claim on June 2, 2000, through the local insurance agency where the Mountain States policy was purchased for payment of some of her medical bills. The insurance agency prepared an Automobile Loss Notice to Mountain States describing the accident. On June 29, 2000, Mountain States issued Plaintiff a check for the limits of its medical pay coverage of $5000. When the payment was made, Mountain States knew that Plaintiff's bills to date were $7000 and that she was continuing treatment. In making this payment, Mountain States became entitled to subrogation under the following provision of its policy:

**OUR RIGHT TO RECOVER PAYMENT:**

A.  If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another, we shall be subrogated to that right. That person shall do:

1.  Whatever is necessary to enable us to exercise our rights;  and

2.  Nothing after loss to prejudice them.

Mountain States notified Farmers on June 30, 2000, of its subrogation claim, and contacted Farmers at various times in 2000, 2001, and 2002, in pursuit of its subrogation claim, each time learning that Plaintiff's claims with Farmers and its insured had not been resolved.

{4} Through counsel, Plaintiff filed a personal injury suit against the driver of the car that rear-ended her and against Farmers on August 26, 2002. On March 4, 2003, without the knowledge or consent of Mountain States, Plaintiff settled the personal injury case and executed a Release in favor of Farmers and its insured in exchange for the

Farmers' policy limits of $30,000. The settlement brought the consent-to-settle exclusion in the Mountain States UIM policy into play. This exclusion provides:

**EXCLUSIONS**

A. We do not provide Uninsured Motorist Coverage sustained by any person:

. . . .

2. If that person or the legal representative settles the bodily injury claim without our consent.

In addition, another section of the policy provides:

**PART E—DUTIES AFTER AN ACCIDENT OR LOSS**

. . . .

B. A person seeking any coverage must:
1. Cooperate with us in the investigation, settlement or defense of any claim or suit.

{5} Farmers issued the settlement check payable to Plaintiff, Mountain States, and GMAC Insurance, and forwarded it to Plaintiff's attorney. Plaintiff's attorney wrote to Mountain States on March 14, 2003, stating he was surprised that Mountain States was included as a payee on the check, and that he had learned of Mountain States' subrogation claim after speaking to the attorney who represented Farmers' insured in the personal injury case. He requested a fee of $1750 (35% of $5000) for recovering the subrogation claim. Mountain States ultimately agreed, and endorsed the Farmers check. This letter of March 14, 2003, was the first notice or indication from any source to Mountain States that Plaintiff had entered into, or was entering into, a settlement with Farmers or its insured in relation to the March 2, 2000, accident.

{6} On July 7, 2003, after Plaintiff settled the personal injury case with Farmers and its insured and after Mountain States endorsed the Farmers' $30,000 settlement check, Plaintiff's attorney wrote Mountain States, stating he had recently learned that Mountain States provided UIM coverage on the vehicle Plaintiff had occupied, and demanded UIM compensation. Mountain States denied the claim, asserting that Plain-

tiff breached the consent-to-settle provision of the policy. Plaintiff sued, asserting claims for breach of contract and unfair claims practices.

{7} The district court granted Mountain States summary judgment. Plaintiff appeals. We conclude: (1) Plaintiff violated the insurance policy when she settled her personal injury action without obtaining consent from Mountain States, (2) Plaintiff's breach resulted in presumed prejudice to Mountain States, (3) Plaintiff failed to rebut the presumed prejudice to Mountain States, and (4) Mountain States failed to put Plaintiff on notice of the provisions of the policy and should be estopped from enforcing its exclusionary provisions. We therefore reverse.

**B. DISCUSSION**

■ {8} Our review in this case is de novo for two reasons: the parties have no dispute about the material facts, but they do dispute the legal effect of those facts; and in determining the legal effect of the undisputed material facts, we must interpret and give effect to the insurance contract. *See Rehders v. Allstate Ins. Co.,* 2006–NMCA–058, ¶ 12, 139 N.M. 536, 135 P.3d 237, *cert. granted,* 2006–NMCERT–005, 139 N.M. 568, 136 P.3d 569 ("Where the material facts are undisputed, leaving only legal questions, our review of the district court order granting summary judgment is de novo."); *Battishill v. Farmers Alliance Ins. Co.,* 2006–NMSC–004, ¶ 6, 139 N.M. 24, 127 P.3d 1111 (stating that the interpretation of an insurance contract is a matter of law).

**1. Plaintiff Violated the Insurance Policy When She Settled Her Personal Injury Action Without Obtaining Consent From Mountain States**

■ {9} The plain language of the insurance policy required Plaintiff to obtain Mountain States' consent to the settlement of her personal injury suit against Farmers and its insured to be entitled to UIM benefits. In addition, the policy clearly and unambiguously required Plaintiff to cooperate with Mountain States in the settlement of that suit, and it required that Plaintiff not do anything to

prejudice subrogation rights of Mountain States. *See Gamboa v. Allstate Ins. Co.*, 104 N.M. 756, 758, 726 P.2d 1386, 1388 (1986) (stating that when reviewing policy coverage, the language of the policy must be given its natural and ordinary meaning unless the language is ambiguous).

{10} The parties do not dispute that Mountain States was not aware of the settlement negotiations, it was not a party to the negotiations, and the settlement was made without the consent of Mountain States. We therefore conclude that Plaintiff violated the insurance policy when she settled her personal injury suit without obtaining consent from Mountain States.

## 2. Plaintiff's Breach in Settling the Personal Injury Action Without Obtaining Consent From Mountain States Resulted in Presumed Prejudice to Mountain States

{11} Plaintiff is not a named insured in the Mountain States UIM policy. She *became* an insured because she was an occupant of the insured vehicle when the accident occurred and she was injured. That is to say, she was a Class 2 insured. *See Konnick v. Farmers Ins. Co. of Ariz.*, 103 N.M. 112, 114–15, 703 P.2d 889, 891–92 (1985) (recognizing two classes of insureds: Class 1, consisting of the named insured as stated in the policy and, while residents of the same household, the spouse of that named insured and relatives of either; and Class 2, consisting of any other person while occupying an insured vehicle).

{12} We begin our analysis with *March v. Mountain States Mutual Casualty Co.*, 101 N.M. 689, 687 P.2d 1040 (1984). The plaintiff (March) was a Class 1 insured under a policy issued by Mountain States that included UIM coverage. *Id.* at 690, 687 P.2d at 1041. The policy contained express consent, right to subrogation, and duty to cooperate provisions that are in all material respects identical to those in this case. *Id.* at 691, 687 P.2d at 1042. After being in an accident, March settled his claim with the other driver and its insurer for policy limits, and released the other driver and his insurer from any further liability for personal injury or property dam-

age. *Id.* at 690, 687 P.2d at 1041. The settlement was without notice to or the consent of Mountain States. *Id.* March then submitted an underinsurance claim to Mountain States, and Mountain States rejected the claim. *Id.* The Supreme Court acknowledged a clear line of New Mexico precedent, which establishes that the settlement or release of a tortfeasor by an insured in violation of express policy provisions destroys the subrogation rights of the insurer. *Id.* at 692, 687 P.2d at 1043. Since "[t]he purpose of a consent-to-settle clause is to protect the insurer's subrogation rights[,]" the Supreme Court rejected March's argument that the consent and subrogation provisions of the policy should not apply to UIM claims. *Id.* The Supreme Court concluded, "the well established contractual nature of subrogation rights in New Mexico logically justifies the use of protective consent provisions, even though our uninsured motorist statutes do not expressly allow such rights or provisions." *Id.* at 693, 687 P.2d at 1044. March's settlement and release without the consent of Mountain States destroyed its subrogation rights, violated the express consent and notice provisions of the policy, and triggered the exclusionary clause of the consent provision in the policy. *Id.* Therefore, Mountain States was under no obligation to provide UIM benefits to March. *Id.*

{13} *State Farm Mutual Automobile Insurance Co. v. Fennema*, 2005–NMSC–010, 137 N.M. 275, 110 P.3d 491, modified *March.* Russell Fennema was also a Class 1 insured who was injured in an accident with an underinsured driver. *Id.* ¶ 3. The State Farm policy excluded UIM coverage "for any *insured* who, without [State Farm's] written consent, settles with any *person* or organization who may be liable for the *bodily injury* or *property damage.*" *Id.* ¶ 4 (internal quotation marks omitted). Without State Farm's written consent, Fennema settled with the tortfeasor, and executed a complete release of liability in favor of the tortfeasor and State Farm. *Id.* State Farm therefore denied his claim for UIM coverage. *Id.* ¶ 1. Our Supreme Court held: "[F]or an insurer to justify foreclosing an insured's right to underinsured motorist benefits, the insurer

must demonstrate it was substantially prejudiced [in enforcing its subrogation rights] by the insured's breach of the consent-to-settle provision," and "[a]lthough the insurer has the ultimate burden of persuasion, proof that the insured breached the consent-to-settle provision creates a presumption of substantial prejudice [to the insurer's subrogation right]." *Id.* ¶ 2. The insured can meet or rebut the presumption by presenting evidence that the insurer was not, in fact, substantially prejudiced. *Id.* ¶ 13. For example, evidence that the tortfeasor is judgment proof rebuts the presumption of prejudice, because the insurer would not be able to recover from the tortfeasor even if the insurer's right of subrogation had been preserved. *Id.*

{14} We hold that *March* and *Fennema* apply to Plaintiff. Although *March* and *Fennema* addressed rights and liabilities of a Class 1 insured, and Plaintiff is a Class 2 insured, we do not perceive any public policy reasons for treating the two classes of insureds differently in this context. UIM coverage assures that in the event of an accident with an underinsured motorist, the insured will receive at least the sum certain in underinsurance coverage purchased. *Fennema,* 2005–NMSC–010, ¶ 8; *March,* 101 N.M. at 693, 687 P.2d at 1044. Since a Class 2 insured becomes entitled to UIM benefits only because he or she occupies an insured automobile, his or her expectations can be no greater than a Class 1 insured. The insurer's interest in protecting its subrogation rights is not diminished by the fact that the recipient of UIM benefits is a Class 2 insured, rather than a Class 1 insured.

{15} The undisputed material facts are that Plaintiff settled her tort claim and released Farmers and its insured without Mountain States' knowledge and consent. These undisputed material facts establish a violation of the consent-to-settle clause exclusion in the UIM policy, triggering a rebuttable presumption that Mountain States suffered substantial prejudice to its right of subrogation because of the breach.

### 3. Plaintiff Failed to Rebut the Presumed Prejudice to Mountain States

{16} Plaintiff points to no evidence in the summary judgment record to meet or rebut the presumption, and we find none. Instead, Plaintiff asserts that Mountain States was not prejudiced as a matter of law for four separate reasons. We now turn to those arguments.

{17} First, Plaintiff argues that *Farmers Insurance Group of Cos. v. Martinez,* 107 N.M. 82, 752 P.2d 797 (Ct.App.1988) fully protects Mountain States' subrogation right as a matter of law in the circumstances of this case. In *Martinez,* we addressed whether an insurer's subrogation action against a tortfeasor was barred under the doctrine of res judicata where its insured had previously dismissed an action against the tortfeasor with prejudice. *Id.* at 83–84, 752 P.2d at 798–99. We said:

> If an insured settles with a tortfeasor *before* an insurer has paid damages to the insured, the insurer's subrogation rights are destroyed and the settlement is a bar to a suit by the insurer against the tortfeasor. If an insured files suit against, and settles with, the tortfeasor *after* receiving payment from the insurer, and the tortfeasor had knowledge of that payment or of the insurer's subrogation claim, the settlement will not be a bar to the insurer's suit against the tortfeasor. If, on the other hand, an insured files suit against, and settles with, the tortfeasor after receiving payment from the insurer, and the tortfeasor had no notice or knowledge of that payment or of the insurer's subrogation claim, the settlement will bar the insurer's suit against the tortfeasor.

(alterations in original) (internal citations omitted).

{18} Plaintiff asserts that this case falls under the second circumstance described above: if the insured settles with the tortfeasor after receiving payment from the insurer, and the tortfeasor had knowledge of that payment or of the insurer's subrogation right, the settlement is not a bar to the insurer's subrogation claim against the tortfeasor. We, however, agree with Mountain States that this statement in *Martinez* is not applicable because notice to a third party tortfeasor of a medical pay subrogation claim

is not the same as notice of a UIM subrogation interest. Notice of one type of claim does not of itself give notice of another type of claim. *See* 16 Lee R. Russ & Thomas F. Segalla, Couch On Insurance, § 224:121 (3d ed.2007) (explaining that the third-party must know of the insurer's "particular type of claim"); 46A C.J.S. *Insurance* § 1472 (1993) ("The notice of the subrogation claim must be specific ...; a general nonspecific subrogation claim cannot place the tort-feasor's insurance company on notice for any specific type of a subrogation claim." (footnote omitted)). *Martinez* gives recognition to this principle by using the phrase "knowledge of *that payment*" in its holding. 107 N.M. at 84, 752 P.2d at 799 (emphasis added). Farmers and its insured had notice that Mountain States provided medical pay benefits to Plaintiff. Obviously, however, no one had notice of any UIM benefits since none were paid. Indeed, the undisputed facts are that Plaintiff herself did not become aware that the Mountain States policy included UIM coverage until after her settlement with Farmers and its insured was finalized. *Martinez* does not apply.

{19} Second, Plaintiff argues the express language of the release excluded Mountain States and preserved its UIM subrogation claim. Mountain States responds that the release cannot be interpreted as preserving Mountain States' right to pursue a UIM claim. We agree with Mountain States.

{20} The release signed by Plaintiff in favor of Farmers and its insured is entitled "RELEASE OF ALL CLAIMS." Plaintiff received $30,000 as consideration for releasing Farmers and its insured "of and from any and all claims, actions, causes of action, demands, rights, damages, costs and expenses, which [Plaintiff] now [has] or which may hereafter accrue on account of or in any way growing out of any and all known and unknown, foreseen and unforeseen bodily and personal injuries" resulting from the accident of March 2, 2000. In exchange for the $30,000, Plaintiff clearly and unambiguously released any and all claims she had against Farmers and its insured. Furthermore, Plaintiff stated she understood that $30,000 was the maximum amount of money she was going to receive from Farmers as a result of the accident.

{21} However, Plaintiff asserts that the following language in the release exempts Mountain States from the release and allows for future claims by Mountain States against Farmers:

> The undersigned further states, swears and affirms that the undersigned did not incur, either individually or collectively, any *medical expenses,* disclosed or undisclosed, which were paid for or provided or reimbursed by any insurer or medical provider *other than Mountain States Insurance Group,* entitling *said insurer* or medical provider *to assert any lien or subrogation interest* ... and the Undersigned shall indemnify and hold harmless the released parties, ... from claims of any other person(s), firm(s), corporations(s), or entity(ies), for reimbursement, contribution, or by reason of any lien or claim of lien, or arising out of any claimed right of subrogation[.]

(Emphasis added.) This provision in the release served only to protect Mountain States' medical pay subrogation right. It did nothing to reserve a UIM subrogation right.

{22} The release cannot be interpreted as eliminating Plaintiff's rights to sue Farmers or its insured, while simultaneously protecting the subrogation rights of Mountain States. The "right of subrogation allows the insurance company, which has compensated the insured, 'to step into the shoes of the insured and collect what it has paid' to the insured from the third party tortfeasor." *Health Plus of N.M., Inc. v. Harrell,* 1998-NMCA–064, ¶ 12, 125 N.M. 189, 958 P.2d 1239 (quoting *Amica Mut. Ins. Co. v. Maloney,* 120 N.M. 523, 527, 903 P.2d 834, 838 (1995)). Since Plaintiff released all her rights against Farmers and its insured, and since Mountain States can recover only what Plaintiff can recover, Mountain States is bound by the release.

{23} Third, Plaintiff asserts that Mountain States was not prejudiced by her settlement with Farmers and its insured because it knew it had subrogation rights

against Farmers and after putting Farmers on notice of those rights, it "took no other action to pursue its claim or participate in the settlement in any way."

{24} Plaintiff's argument assumes that because Mountain States knew it had subrogation rights arising from its medical payment, it also must have known it had or would have UIM subrogation rights as well. The summary judgment record shows that Plaintiff filed a medical pay claim with Mountain States after she was injured; that Mountain States paid the limits of its medical pay coverage to Plaintiff in the amount of $5000, knowing that Plaintiff had incurred $7000 in medical bills and was still being treated; that Mountain States knew the driver who struck the vehicle occupied by Plaintiff was insured by Farmers; that Mountain States was entitled to subrogation; that Mountain States pursued its subrogation claim with Farmers at various times in 2000, 2001, and 2002; that Plaintiff was negotiating with Farmers to settle her personal injury claim; that Plaintiff released Farmers and its insured on March 4, 2003; and that the letter from Plaintiff's attorney to Mountain States on March 14, 2003, was the first notice to Mountain States that Plaintiff had entered into a settlement with Farmers in relation to the March 2, 2000, accident. Finally, the summary judgment record shows that the first time Mountain States became aware of any assertion or claim that Plaintiff was injured by an underinsured driver was on July 7, 2003, when Plaintiff's attorney made the underinsurance claim to Mountain States.

{25} Plaintiff's reliance on *In re Aetna Casualty and Surety Co. v. Crown*, 181 A.D.2d 883, 581 N.Y.S.2d 418 (N.Y.App.Div. 1992) is clearly misplaced. In that case, the court held that there was a question of fact as to whether the insurer acquiesced in the settlement. *Id.* at 884, 581 N.Y.S.2d 418. However, the facts in *Crown* are materially different. The insured informed the insurer early on that he would be seeking UIM benefits. *Id.* at 883, 581 N.Y.S.2d 418. When the tortfeasor's insurer offered to settle for policy limits, the insured forwarded the offer to his insurer. *Id.* The insured presented evidence that he had discussed the proposed settlement with a representative of insurer, and that he discussed executing a general release. *Id.* at 883–84, 581 N.Y.S.2d 418. The insurer, however, remained silent in the face of this information, so the insured settled and executed the general release. *Id.*

■ {26} A "waiver is the intentional relinquishment or abandonment of a known right," *Jackson National Life Insurance Co. v. Receconi*, 113 N.M. 403, 412, 827 P.2d 118, 127 (1992), and to acquiesce is "to give implied consent." *Black's Law Dictionary* 24 (8th ed.2004). Thus, for either concept to apply, Mountain States had to be on notice that it had a UIM subrogation claim that it needed to protect and then chose not to protect its right. These elements are not supported by the evidence before us. Mountain States did not know settlement negotiations for policy limits were imminent or pending. Plaintiff never asked Mountain States to participate in the negotiations or to consent to the settlement agreement. Prior to the settlement agreement, Plaintiff had not filed a UIM claim or informed Mountain States of her intent to do so. Thus, Mountain States could not protect subrogation rights to a UIM claim it did not even know existed. *See March*, 101 N.M. at 693, 687 P.2d at 1044 (noting that an insurer's waiver is not possible where the insured did not give the insurer an opportunity to consent to a settlement).

{27} We agree with Mountain States that under established New Mexico law, Mountain States could only have waived its UIM subrogation rights if it was on notice that they existed before Plaintiff executed the release.

■ {28} Finally, Plaintiff asserts that the settlement did not substantially prejudice the subrogation rights of Mountain States because on the date she signed the release settling her personal injury claim against Farmers and its insured, the statute of limitations had already expired on its subrogation claim. We disagree.

{29} The statute of limitations for a personal injury claim is three years. NMSA 1978, § 37–1–8 (1976) (requiring filing of a suit "for an injury to the person or reputation of any person, within three years"). It

is well-settled that the same statute of limitations applies to the subrogation claim of Mountain States. *Liberty Mut. Ins. Co. v. Warren*, 119 N.M. 429, 431, 891 P.2d 570, 572 (Ct.App.1995) (stating that an insurance carrier bringing a subrogation action against an alleged tortfeasor "is bound by the same limitation period as the insured would be if the insured were bringing the suit"); *Am. Gen. Fire & Cas. Co. v. J.T. Constr. Co.*, 106 N.M. 195, 196, 740 P.2d 1179, 1181 (Ct.App. 1987) ("[C]ourts generally have adhered to the view that the statute of limitations begins to run on a subrogated insurer's action against a third-party tortfeasor at the same time that the statute of limitations would begin to run on an action by the insured[.]" (quoting Jane Massey Draper, Annotation, *When Does Statute of Limitations Begin to Run Upon an Action by Subrogated Insurer Against Third–Party Tortfeasor*, 91 A.L.R.3d 844, § 2[a] at 847 (1979))). The accident was on March 2, 2000. Therefore, the statute of limitations expired on March 2, 2003. Since Plaintiff signed the release in favor of Farmers and its insured two days later, on March 4, 2003, Plaintiff argues, the statute of limitations on the subrogation claim already expired, and the settlement did not prejudice Mountain States.

{30} Plaintiff's argument overlooks the legal effect of the personal injury claim she filed against the driver who rear-ended her and against Farmers on the statute of limitations. The statute of limitations was tolled when the complaint was filed on August 2, 2002. *See Murphy v. Citizens Bank of Clovis*, 244 F.2d 511, 512 (10th Cir.1957) ("The act of filing a complaint conditionally suspends the statute of limitations."); *Prieto v. Home Educ. Livelihood Program*, 94 N.M. 738, 741, 616 P.2d 1123, 1126 (Ct.App.1980) (stating that the statute of limitations is tolled when the complaint is filed and the summons issued); 54 C.J.S. *Limitations of Actions* § 260 (2007) ("A suit commenced within the time prescribed by statute tolls a statute of limitations." (footnote omitted)). As a result, when Plaintiff filed her personal injury action on August 2, 2002, the statute of limitations was tolled not only on the personal injury action, but also on any subrogation action that might be filed by Mountain States. We therefore reject Plaintiff's argument that the statute of limitations on a subrogation claim by Mountain States had already expired when she signed the release settling her personal injury case with Farmers and its insured.

## 4. Plaintiff's Breach is Excused Because She Did Not Have Notice of the UIM Coverage

{31} Plaintiff argues that Mountain States should be estopped from relying on the consent-to-sue exclusion clause because Mountain States failed to fulfill two duties it owed to her as an insured under the policy. First, Plaintiff contends that, as an aspect of its duty of good faith and fair dealing, Mountain States had a duty to inform her of the availability of UIM coverage under the policy. Plaintiff argues in effect that once an insurer learns that a Class 2 insured has filed a claim under the medical payment provision of the policy, the insurer has a duty to affirmatively inform the Class 2 insured of: (1) whether the policy *also* provides UIM benefits, and (2) all the requirements to be entitled to such benefits. Second, Plaintiff argues that upon receipt of a medical payment claim, Mountain States had a duty to conduct a reasonable and timely investigation to protect its subrogation rights for any UIM responsibility it might have.

{32} We reject Plaintiff's second contention and partially agree with her first argument for basically the same reason: the parties' respective need for, and lack of, sufficient information to guide their actions under these circumstances.

{33} We ruled earlier in the Opinion that the payment by Mountain States of a medical pay claim did not serve to put Mountain States on notice of a potential UIM claim which it had to actively protect. The same considerations apply here. An insurer's duty to investigate does not exist in a vacuum; it must be prompted by events. Absent some kind of notice that a UIM claim was being made or could reasonably be expected, nothing in this factual circumstance triggered for Mountain States the duty to investigate which our Supreme Court described in *Fen-*

*nema*, 2005–NMSC–010, ¶ 12 (citing *Sloan v. State Farm Mut. Auto. Ins. Co.*, 2004–NMSC–004, ¶¶ 3, 19, 135 N.M. 106, 85 P.3d 230).

**{34}** Lack of information plays a similar role-though this time in Plaintiff's favor-with regard to an insurer's duty to put its insureds on notice as to the provisions of its policy. In this case it is apparently undisputed by Mountain States that neither Plaintiff nor her attorney knew that UIM coverage existed. In the course of litigating the parties' cross motions for summary judgment, Plaintiff asserted by affidavit that she was "not the holder of the Mountain States policy and … did not have notice of its terms and conditions." Plaintiff's attorney asserted by affidavit that he "was unaware of the existence" of UIM "coverage until he received the settlement check from Farmers." Plaintiff asserted she and her attorney did not inquire into the existence of UIM coverage because the police report prepared after the collision indicated that the vehicle in which Plaintiff was a passenger had no insurance coverage.

**{35}** In response, Mountain States admitted it never advised Plaintiff of the existence of UIM coverage. Mountain States also admitted Plaintiff's attorney's assertion that he was unaware of the existence of UIM coverage before he received the settlement check from Farmers. Mountain States asserted that the attorney's lack of knowledge could not be attributed to it; rather, it was Plaintiff's fault for not telling him that the car was insured or that she had made a medical pay claim. In the alternative, Mountain States asserted it was the attorney's fault for not investigating the accuracy of the police report.

**{36}** Without assessing blame, what is clear on this record is that Plaintiff did not have any information about the Mountain States policy, the UIM coverage potentially available to her, or her responsibilities under the policy. Plaintiff's argument here mirrors Mountain States' argument with regard to its duty to investigate; that is, how can Plaintiff be held responsible for not doing something that she did not know was required of her?

**{37}** Plaintiff's contention is that Mountain States should have put her on notice of her responsibilities as an insured. Mountain States' position is that Plaintiff should have asked for information.

**{38}** We resolve the tension by holding that insurers such as Mountain States have a primary responsibility to provide their insureds reasonable notice of the contents of their policy by providing a "copy of the policy or some other documentation of its terms." *Kozlik v. Gulf Ins. Co.*, 2003 WI App 251, ¶ 13, 268 Wis.2d 491, 673 N.W.2d 343, ¶ 13 (holding that insurer may not deny coverage based on an exclusion in the policy if the insurer does not provide a copy of the policy or otherwise fails to inform the insured about the policy's coverage and limitations). Since Class 2 insureds are by policy and regulatory definition "insureds" under the UIM policy, once identified, they too should be entitled to reasonable notice of the terms of the policy before an insurer can expect to enforce those terms to deny or limit coverage. As we noted earlier in this Opinion, there is no reason in this context to treat the two classes of insureds differently.

**{39}** There is no New Mexico case directly on point; in particular none involving Class 2 insureds. There is New Mexico authority supporting our holding by analogy. And there is authority from other jurisdictions which is on point. We start with the New Mexico cases.

**{40}** *Willey v. United Mercantile Life Ins. Co.*, 1999–NMCA–137, 128 N.M. 98, 990 P.2d 211, is the most recent of our cases addressing the effect of an insurer's failure to provide a copy of a policy to an insured. *Willey* involved a claim for benefits under a credit life and disability policy. After its insured became disabled, the insurance company in *Willey* refused to make a balloon payment on the loan covered by the disability policy. The insured obtained a new loan but had difficulty paying it also. Approximately four years after the insurer refused to pay, the insured filed an action to enforce coverage. The insurer defended asserting that the complaint was untimely under a provision of the policy that set a three-year limit on actions to recover under it. *Id.* ¶¶ 3–6.

{41} Conceding that he was late to file under the terms of the policy, the insured argued the insurance company was "estopped" from relying on the provision because the insurer had not delivered a copy of the policy to him until the limitations period had expired. *Id.* ¶¶ 13–14. The insured relied on a statutory provision requiring "delivery to the debtors-insureds of policies of credit life and credit health insurance," and on "general propositions of insurance law." *Id.* ¶ 15. Not persuaded that the statute provided relief, we relied on "general insurance law" to hold that estoppel could lie if the insured proved he did not receive a copy of the policy which included the limitations provisions. *Id.* ¶ 18. We held that the one-page document the insured had received was not sufficient by itself to put him on notice of the policy's limitations provision or even the potential existence of a separate policy. *Id.*

{42} Our opinion in *Willey* relied on *Homestead Investments, Inc. v. Foundation Reserve Ins. Co.*, 83 N.M. 242, 245, 490 P.2d 959, 962 (1971). In *Homestead*, our Supreme Court held that the insurance company could not use notice provisions of a fire policy to deny coverage where the memorandum of insurance the insured had been given did not include the provisions the insurer was relying on. *Id.*

{43} The holdings in *Willey* and *Homestead* are in accord with case law from other states. As noted in *Willey*, some of the cases rely on statutory requirements of delivery. 1999–NMCA–137, ¶ 21, 128 N.M. 98, 990 P.2d 211. *Willey* relied on a perhaps too restrictive view of the rationale of these cases to decide that they did not apply to its facts. *Id.* ¶ 22. But other cases rely on the public policy imperative that insurers give fair notice of the contents of their policies to their insureds. *Farmers Ins. Exch. v. Call*, 712 P.2d 231, 236–37 (Utah 1985) (holding that public policy requires that insureds be informed in writing of the essential terms of policies, especially exclusionary terms, and that failure to do so makes the exclusions invalid); *Kippen v. Farm Bureau Mut. Ins. Co.*, 421 N.W.2d 483, 486 (N.D.1988) (holding that insured's failure to notify insurer of their settlement with and release of tortfea-

sor did not preclude them from recovering underinsured benefits where the insurer never sent insureds a copy of the policy or other documentation; and stating that even if the statute requiring uninsured coverage put the insureds on notice of the existence of the coverage, it did "not alleviate the insurer's primary duty to provide a copy of the policy or other documentation of the terms of coverage"); *see also, Kozlik*, ¶ 155 stating:

> If an insured is not given a copy of the policy, he or she cannot take whatever action is appropriate to protect his or her interests nor can he or she ensure that the coverage, which he or she thinks has been contracted for, is actually provided. We therefore hold that an insurer may not deny coverage based on limitations or exclusions in a policy, even if clearly stated, where the insured was not otherwise informed of such provisions.

*Id.*

{44} Plaintiff's position is stronger than that of the claimants in *Willey* and *Homestead*. In each of those cases the insureds knew they owned a policy and had some documentation provided to them. Here it is undisputed that Plaintiff was not aware of the UIM coverage and that no one provided her with any information about the policy.

{45} *Willey* and *Homestead* do not explicitly discuss or profess to create a duty on the part of an insurer to provide a copy of the policy to insureds. Perhaps there was no need to do so since the insureds in those cases knew they were insured and had some evidence of their policy. Or perhaps the parties simply did not present the argument. Or perhaps the point is simply obvious that a basic prerequisite to enforcing a limitation on coverage or a duty under a policy is providing notice of any such provisions to the insured. Imposing a duty on insurers to provide reasonable notice to their insureds of such provisions of their policies is simply the other side of the coin which disallows insurer reliance on undisclosed provisions.

{46} The factual wrinkle presented by this case-the presence of a Class 2 UIM insured-does not change the principle that the insured must be put on notice of provisions in the policy that the insurer wants to enforce

against him or her. The simplest way to provide notice is by giving the Class 2 insured a copy of the policy-or its UIM provisions at the least. This is not an onerous responsibility in that it would only apply to Class 2 insureds of whom the insurance company is aware. Surely, it is routine practice for insurers to identify all occupants in covered vehicles involved in collisions reported to them. Failure to do so should prevent the insurer's reliance on exclusionary provisions such as those we consider here. Of course, insurers are always free to prove that the insured or her attorney had reasonable notice of the provision from other sources.

{47} Given that there is no question on this record that Plaintiff was not aware of the consent-to-settle provision, Mountain States may not use it to deny coverage.

## C. CONCLUSION

{48} The summary judgment in favor of Mountain States is reversed.

{49} **IT IS SO ORDERED.**

CYNTHIA A. FRY, Judge, concurs.

MICHAEL E. VIGIL, Judge, dissents.

VIGIL, Judge (dissenting).

{50} I dissent from the holding of the majority that when Plaintiff submitted the claim for payment of her medical bills to Mountain States, this automatically triggered an affirmative obligation upon Mountain States to provide her with notice of the terms of the underinsurance policy. Having breached this duty, the majority concludes, Mountain States is estopped from enforcing the consent-to-settle provision of the policy. This asserted duty has no basis in tort, contract, or public policy.

{51} Underinsurance coverage is purchased to insure against damages caused by a negligent motorist who is insured, but does not have sufficient insurance to provide for full compensation. It operates as if the negligent motorist had a liability policy up to the full amount of the underinsurance policy. Plaintiff was a beneficiary of the underinsurance policy issued by Mountain States *only* because her daughter-in-law purchased the coverage for her own benefit, and the benefit of anyone else who was in her car and injured by an underinsured, negligent motorist. In insurance parlance, Plaintiff was a Class 2 insured. *See Konnick,* 103 N.M. at 114–15, 703 P.2d at 891–92. Plaintiff did not purchase the underinsurance coverage in this case, and she was not a named insured. Until the accident occurred, she was a complete stranger to the policy, and she *became* an insured only because she was a passenger in her daughter-in-law's vehicle, which had underinsurance coverage issued by Mountain States when the accident occurred. Her status as a Class 2 additional insured does not of itself relieve Plaintiff from complying with the consent to settle provision of the policy. However, the majority concludes that she is excused because Mountain States did not automatically provide her with notice of the terms of the underinsurance policy when she submitted the claim for payment of her medical bills.

{52} Plaintiff was a passenger in a vehicle owned and driven by her daughter-in-law when they were rear ended by another vehicle on March 2, 2000, causing Plaintiff personal injuries. Both vehicles were insured: the vehicle occupied by Plaintiff was insured by Mountain States, and the vehicle which struck them was insured by Farmers. Plaintiff knew that her daughter-in-law's vehicle was insured. On June 2, 2000, she went to the local insurance agency where the policy was purchased, seeking payment of her medical bills which were approximately $7000, and on June 30, 2000, Plaintiff received a check from Mountain States in the amount of $5000, which was the limit of its medical pay coverage. Although Plaintiff knew her daughter-in-law's vehicle was insured, she did not ask her daughter-in-law or son for a copy of the Mountain States policy, and she did not ask the local agent for a copy of the policy when she filed the medical payment claim.

{53} Plaintiff also hired an attorney in June 2000, to represent her in connection with the accident. In fact, when Plaintiff received the $5000 payment from Mountain States under its medical pay coverage, she was already represented by counsel. How-

ever, he did not inquire of Mountain States what other coverages might be available to Plaintiff. On June 17, 2002, Plaintiff's attorney wrote Farmers enclosing her medical bills to date which were in excess of $16,000. He concluded by stating, "I am in the process of ascertaining my client's current medical status, i.e. whether she has reached maximum medical improvement. When I have learned the answer to this question, I will send you a settlement offer." Plaintiff's attorney then filed a personal injury suit against the driver of the car which rear-ended her and against Farmers on August 26, 2002. Plaintiff's medical bills eventually totaled slightly less than $27,000, and on January 30, 2003, Plaintiff and her attorney agreed to accept $30,000 in full and final settlement of her claim against the driver of the car which struck her, "conditioned upon our receipt of documentation confirming the policy limits in this matter." On March 4, 2003, with her attorney's approval, Plaintiff accepted the policy limits of coverage provided by the Farmers policy in the amount of $30,000. Plaintiff and her attorney therefore knew that the driver insured by the Farmers policy was underinsured before they settled. Plaintiff's attorney did no investigation to determine whether any coverage for Plaintiff's injuries was available from the vehicle she occupied when she was injured, because he relied on the police report which said there was no insurance coverage on the vehicle occupied by Plaintiff. On the other hand, Plaintiff had personal knowledge that her daughter-in-law was insured by Mountain States (at least for the medical pay coverage), so she could not reasonably rely on the police report that the vehicle she occupied at the time of the accident had no insurance coverage.

{54} The real question presented by this case is whether Plaintiff's failure to comply with the consent to settle provision of the underinsurance policy is excused. Under the circumstances, I conclude it was not. "[I]t is settled law that an additional insured's ignorance of the policy provisions will excuse his failure to satisfy its requirements only if the lack of knowledge is reasonable under all the circumstances." *Burke v. Liberty Mut. Ins. Co.*, 201 A.D.2d 773, 607 N.Y.S.2d 483, 484

(N.Y.App.Div.1994). In a similar vein, *Kippen v. Farm Bureau Mutual Insurance Co.*, 421 N.W.2d 483, 486 (N.D.1988) states, "[A] beneficiary's ignorance of the existence of an insurance policy, which is not due to his own negligence or fault, excuses his failure to provide notice of claim to the insurer within the time period set by the policy." (quoting *Finstad v. Steiger Tractor, Inc.*, 301 N.W.2d 392, 395 (N.D.1981)). Finally, *Ferrando v. Auto–Owners Mutual Insurance Co.*, 98 Ohio St.3d 186, 2002–Ohio–7217, 781 N.E.2d 927, at ¶ 98 states:

> Where coverage is sought by an additional insured, that is, by a person who is not the named insured under the policy * * * the most common reason for failure of such additional insured to give timely notice to the named insured's insurer is that the additional insured was not aware of the fact that he was covered under the policy issued to the named insured. Courts have generally held that where an additional insured's ignorance of coverage is understandable, and where notice is given promptly after the additional insured becomes aware of possible coverage, even a long period of delay is excusable * * *. However, courts place limits on their liberality with respect to excusing delayed notice by holding generally that ignorance of coverage is no excuse where the additional insured failed to exercise due diligence in investigating possible coverage, a caveat which is usually invoked where the facts are such that the additional insured should have looked into the matter of coverage sooner than he did.

(quoting Job A. Sandoval, Annotation *Timeliness of Notice of Accident by Additional Insured*, 47 A.L.R.3d 199, § 2[a] at 202 (1973)).

{55} The foregoing authorities recognize that an insured has some responsibility to learn what coverage is available to her, and what the terms of that coverage are. I conclude that Plaintiff's failure to learn of the existence of the terms of the underinsurance coverage that was available to her was unreasonable and unjustified in light of the undisputed material facts. Plaintiff knew that the vehicle she occupied at the time of the acci-

dent was insured by her daughter-in-law with Mountain States. Plaintiff did not ask her daughter-in-law what the policy provisions were. Plaintiff filed a medical pay claim directly with Mountain States, and did not ask the agent whether other provisions of the policy provided her with coverage for the accident. Plaintiff hired counsel to represent her in connection with the accident in plenty of time for him to request and obtain copies of the pertinent policy provisions from Mountain States. *See Willey*, 1999–NMCA–137, ¶ 19 (stating that the insured's reliance on a document describing the insurance coverage "would no longer be reasonable once he retained an attorney and the attorney had a reasonable time to request a copy of the [p]olicy from [the insurance company].").

{56} The covenant of good faith and fair dealing would require Mountain States to provide Plaintiff or her attorney with full and accurate information concerning the pertinent policy provisions if the information had been requested, and its failure to provide the information would result in an estoppel preventing Mountain States from relying on the policy requirements. However, the majority goes much further, and imposes an additional, affirmative duty upon the insured to provide the information to Plaintiff without being asked to, simply because a medical pay claim is filed. I do not equate submitting a medical payment claim with a request to be provided with notice of the terms of any underinsurance provisions which may apply. Mountain States had no duty to speak because merely submitting a claim for reimbursement of medical expense does not of itself equate with notice that another driver is underinsured. *See Mosley v. Magnolia Petroleum Co.*, 45 N.M. 230, 247, 114 P.2d 740, 751 (1941) (stating that to constitute an estoppel by silence there must not only be a duty to speak but also a reliance on the silence). Finally, I would hold that under the undisputed material facts of this case, Plaintiff must bear the consequences of failing to comply with the consent to settle provision of the policy. Since the majority concludes otherwise, I respectfully dissent.