1999-NMCA-137

990 P.2d 211

**Jerry W. WILLEY, Plaintiff–Appellant,**

v.

**UNITED MERCANTILE LIFE INSURANCE COMPANY, a credit life insurance company, Defendant–Appellee.**

**No. 19,600.**

Court of Appeals of New Mexico.

July 12, 1999.

M.J. Keefe, Albuquerque, for Appellant.

Colbert N. Coldwell, El Paso, TX, for Appellee.

## OPINION

HARTZ, Judge.

{1} Jerry W. Willey appeals a summary judgment dismissing his claim against United Mercantile Life Insurance Company (United) with respect to a credit life and disability policy (the Policy). The district court ruled that Willey's claim was barred by the three-year limitations period set forth in NMSA 1978, § 59A–22–14 (1984), and incorporated into the terms of the Policy. On appeal Willey contends that Section 59A–22–14 is not applicable, that the three-year limitations period in the Policy is invalid because it is contrary to public policy, and that the applicable limitations period is therefore the six-year period for breach-of-contract actions, NMSA 1978, § 37–1–3 (1975). He also contends that even if the contractual three-year limitations period is otherwise applicable, United is estopped from relying on the contractual provision because of its failure to deliver the Policy to him before expiration of the limitations period. We hold that the three-year limitations period in the Policy is valid. But then, after pointing out that Section 59A–22–14 is not a statute of limitations, we hold that Willey presented a prima facie case of estoppel, thereby precluding summary judgment on the record before us. We reverse and remand for further proceedings.

## I. *BACKGROUND*

{2} On June 24, 1991, Willey executed a promissory note (the Note) to Western Bank of Las Cruces, New Mexico, in the principal amount of $23,998.23. The Note was payable in twenty-three monthly installments of $450 beginning July 25, 1991, and a final payment on June 25, 1993, of the unpaid principal plus

accrued interest. The interest was to accrue at the greater of ten percent or two percent over the *Wall Street Journal* Prime Rate, to be adjusted daily. To ensure that loan payments would continue if he were to die or become disabled, Willey obtained credit life and disability insurance from United on the day he executed the Note. The single premium of $879.28 was paid with loan proceeds. The insurance had an effective date of June 24, 1991, and an expiration date of June 25, 1993.

{3} Willey became disabled. United paid disability benefits from December 3, 1991, to June 25, 1993. Willey contends that United refused to make the balloon payment due on June 25, 1993.

{4} Apparently, Willey later obtained a new loan with Western Bank to pay the remainder due on the Note, but he was unable to keep up with the payments and received notices of default from the bank. Eventually he obtained legal advice. On February 14, 1997, an attorney wrote United on his behalf, requesting an explanation for its failure to pay the amount sought by Willey. United continued to assert that it did not owe Willey any money, and Willey filed the complaint in this action on September 11, 1997.

{5} On October 23, 1997, United filed its answer to the complaint, a counterclaim for attorney fees, and a motion to dismiss. The motion argued three grounds for dismissal. First, it contended that the complaint was untimely under the following provision in the Policy:

> **Legal Actions.** No legal action may be brought to recover on this Policy within 60 days after written proof of loss has been given as required by this Policy. No such action may be brought after three years from the time written proof of loss is required to be given.

A separate provision of the Policy requires that proof of loss be given within 90 days of the loss. Second, the motion contended that the policy was a type of health insurance governed by what it termed a three-year "statute of limitations" set forth in Section 59A–22–14, and that the claim was barred by the statute. Third, it contended that the

Policy did not cover the balloon payment. Willey responded that the Policy was a type of life insurance governed by NMSA 1978, § 59A–20–25 (1987), which he read as requiring that any limitations period in the Policy be at least five years. He also claimed that the Policy covered the balloon payment.

{6} After receiving the briefs, the district court conducted a hearing on United's motion. The court then requested simultaneous supplemental briefs on the interplay between the limitations-of-actions provision in the Policy and the sections of the Insurance Code relating to limitations of actions for insurance policies. In his supplemental brief Willey for the first time contended that United was estopped from relying on the three-year limitations period in the Policy because of United's failure to deliver the Policy to him.

{7} The district court issued its letter decision on April 7, 1998. The court stated that Willey's action was barred by the statutory limitations period. The court directed counsel for United to prepare the order. The summary judgment, which was entered on June 4, dismissed Willey's complaint but made no mention of United's counterclaim for attorney fees. *Cf. Kelly Inn No. 102, Inc. v. Kapnison,* 113 N.M. 231, 239–40, 824 P.2d 1033, 1041–42 (1992) (judgment is final and may be appealed despite failure to award attorney fee).

## II. *DISCUSSION*

### A. *Validity of Limitations Period in Policy*

{8} As previously stated, the Policy contained the following provision:

> **Legal Actions.** No legal action may be brought to recover on this Policy within 60 days after written proof of loss has been given as required by this Policy. No such action may be brought after three years from the time written proof of loss is required to be given.

Willey has not challenged United's position that this provision would bar Willey's claim if the provision is valid and if United is not estopped from enforcing it. *But see Geyerhahn v. United States Fidelity & Guar. Co.,*

724 A.2d 1258, 1261–62 (Me.1999); *Panepinto v. New York Life Ins. Co.*, 90 N.Y.2d 717, 665 N.Y.S.2d 385, 688 N.E.2d 241 (1997). First, we discuss the validity of the provision.

{9}  One ground for invalidity of the provision would be that it violates a statute. In district court Willey initially contended the three-year limitations period in the policy was rendered invalid by Section 59A–20–25(A), which states in pertinent part:

No policy of life insurance shall be delivered or issued for delivery in this state if it contains any of the following provisions:

(1) a provision for a period of not [sic] less than five years within which an action at law or in equity may be commenced after the cause of action shall accrue[.]

(Willey apparently assumed that paragraph (1) states the opposite of what was intended; that is, he read the paragraph as if the word *not* is a scrivener's error.) But in his supplemental brief in district court Willey conceded that Section 59A–20–25(A) does not apply to the Policy. The standard policy provisions set forth in Article 20 of the Insurance Code (Chapter 59A of the New Mexico Statutes Annotated, *see* NMSA 1978, § 59A–1–1 (1993) (chapter title)) do not apply to "any provision of a life insurance policy or contract supplemental thereto relating to disability benefits." NMSA 1978, § 59A–20–3(B) (1984). Willey has not pointed to any other statutory provision that would prohibit the three-year limitations period in the Policy.

{10}  In the absence of a statutory prohibition, "provisions in insurance policies which limit the period within which suit may be brought after damage occurs are valid and enforceable if the time period is reasonable." *Young v. Seven Bar Flying Serv., Inc.* 101 N.M. 545, 547, 685 P.2d 953, 955 (1984). In our view, the three-year limit is reasonable. Even though the general limitations period for actions on a contract is six years, *see* § 37–1–3(A), our Supreme Court has recognized a twelve-month time-to-sue provision on a policy insuring against theft. *See Young*, 101 N.M. at 547–48, 685 P.2d at 955–56. Willey has not cited any authority indicating that a three-year limitations period on a disability policy is unreasonably short.

{11}  Moreover, the three-year limitations period has the imprimatur of our Legislature. Article 22 of the Insurance Code applies to policies of individual health insurance. *See* NMSA 1978, § 59A–22–1 (1984). The Insurance Code defines health insurance as

insurance of human beings against bodily injury, *disablement* or death by accident or accidental means, or the expense thereof, or against *disablement* or expense resulting from sickness or old age, or covering as to both accident and sickness, and every insurance appertaining thereto, together with provisions operating to safeguard contracts of health insurance against lapse in event of strike or layoff due to labor disputes.

NMSA 1978, § 59A–7–3 (1984) (emphasis added). Section 59A–22–14 sets forth a standard limitations provision for contracts for individual health insurance:

There shall be a provision as follows:

No action at law or in equity shall be brought to recover on this policy prior to the expiration of sixty days after written proof of loss has been furnished in accordance with the requirements of this policy. No such action shall be brought after the expiration of three years after the time written proof of loss is required to be furnished.

This language is virtually identical to the language in the limitations provision of the Policy. Thus, our Legislature has clearly determined that a three-year limitations period in a disability policy is reasonable.

{12}  United would have us go one step further. It contends that Section 59A–22–14 constitutes a statute of limitations that governs Willey's action against it. On that point, however, we disagree with United. The language of Section 59A–22–14 appears to be mandatory. But NMSA 1978, Section 59A–22–3 (1984), which is entitled "Required provisions," provides "that the insurer may, at its option, substitute for one or more of [the required] provisions corresponding provisions of different wording approved by the superintendent [of insurance] which are in each instance not less favorable in any respect to the insured or beneficiary." Accord-

ingly, a health insurance policy could contain a four-year limitations period, and Section 59A–22–14 would not bar an action filed within that four-year period.

### B. *Estoppel*

{13}   Given that the limitations provision in the Policy is valid and that Willey does not dispute that he failed to file his complaint within the period set forth in the provision, United established its entitlement to summary judgment. *See* Rule 1–056(C) NMRA 1999. Willey therefore had the burden of producing evidence that would establish an "affirmative defense" to United's limitations defense. *Cf.* Rule 1–008(C) NMRA 1999 (including estoppel as an affirmative defense that should be pleaded).

█ {14}   Willey argues that even if the three-year limitations provision of the Policy is valid, United is estopped from relying on the provision because United failed to deliver Willey a copy of the Policy containing the provision until the limitations period had expired. The district court's letter decision did not mention this argument, which was raised for the first time in Willey's supplemental brief after the hearing on United's motion to dismiss. Although Willey may have been untimely in raising the issue, we will address it; the district court did not dispose of the issue on the ground that it was raised too late, and United has not argued untimeliness on appeal. *Cf. Hartford Accident & Indem. Co. v. Beevers*, 84 N.M. 159, 162, 500 P.2d 444, 447 (Ct.App.1972). (appeals court does not consider whether request at trial was untimely, because district court did not refuse request on that ground). Before discussing whether Willey presented sufficient evidence of estoppel to preclude summary judgment, we review the pertinent law.

{15}   Willey relies on two sources for his estoppel argument. One is case law regarding insurance contracts. The other is a specific provision of the Insurance Code, NMSA 1978, § 59A–25–7 (1984), which requires delivery to the debtors-insureds of policies of credit life and credit health insurance. Although we are not persuaded that Willey is entitled to relief under Section 59A–25–7, we

believe that he may be entitled to relief under general propositions of insurance law.

{16}   Two decisions by the New Mexico Supreme Court frame the issue. In *Homestead Investments, Inc. v. Foundation Reserve Insurance Co.*, 83 N.M. 242, 490 P.2d 959 (1971), the plaintiff sought recovery for a fire loss. The insurance company defended on the ground that the plaintiff had failed to submit a written proof of loss and had failed to file a court action within twelve months following the date of loss, as required by the policy. *See id.* at 243, 490 P.2d at 960. The plaintiff contended that the insurer was estopped from relying on those provisions of the policy because the insurer had not delivered the plaintiff a copy of the policy containing the provisions. The complete policy had been delivered to the bank that held a mortgage on the property, but the Supreme Court held that the bank was not the agent of the plaintiff. *See id.* The document furnished to the plaintiff by the insurer, which was eight pages long, recited various provisions of the policy but did not include any reference to proofs of loss or the twelve-month limitations period. *See id.* After quoting from several out-of-state decisions in similar cases, our Supreme Court wrote:

This court is in accord with the foregoing decisions in holding that the insured should be able to rely upon the provisions of his policy or memorandum of insurance to inform him of all his rights and duties under his insurance contract. The trial court found that the policy delivered by defendant to plaintiff did not include the provisions requiring written proof of loss, and that any action on the policy be commenced within twelve months following the loss.

We hold that because of defendant's failure to include provisions required by [statute], relating to written proof of loss and the twelve-month limitation period in which to bring suit, it cannot now rely upon the terms of the statute to preclude plaintiff's recovery. The trial court was correct when it held that the defendant was estopped from asserting the policy limitations.

*Id.* at 245, 490 P.2d at 962.

{17}   Our Supreme Court reached an opposite result in *Young.* The plaintiff sued

the insurer with respect to a loss suffered when the plaintiff's airplane was stolen. *See* 101 N.M. at 546, 685 P.2d at 954. The district court granted the insurer summary judgment based on a twelve-month limitation period in the master insurance policy. *See id.* at 547, 685 P.2d at 955. Although citing *Homestead* for the proposition that an insured "may rely on [a copy of the policy or memorandum of insurance] supplied to inform him of all his rights and duties under the insurance contract," it held that the insured's "failure to provide [the plaintiff], as loss payee, with a copy of the insurance policy is insufficient, absent more, to constitute a waiver of the time-to-sue provision or to estop [the insurer] from asserting the provision." *Id.* at 548, 685 P.2d at 956. The court wrote:

> If an insurer gives the impression that all of the material provisions of an insurance contract are contained in a document furnished to the insured by the insurer, then the insurer cannot invoke provisions in the original which were not included in the copy given to the insured. However, failure of an insurer to provide an individual with a copy of an applicable insurance policy will not, in every case, release the individual from the time-to-sue provisions in the policy.

*Id.* (citation omitted). The court pointed out that the document provided by the insurer to the plaintiff "did not purport to contain an exclusive description of [the plaintiff's] rights and duties under the insurance contract." *Id.* On the contrary, the document stated: " 'For particulars concerning the limitations, conditions and terms of the coverage you are referred to the original Policy or Policies in the possession of the Assured.' " *Id.*

■ {18} Comparing *Homestead* and *Young*, the critical difference appears to be whether the document supplied to the insured may have suggested that all the restrictions of the policy were set forth in the document. The present case is closer to *Homestead* than *Young*. In an affidavit filed with the district court, Willey asserted that the only paperwork he received regarding the Policy was a one-page document (the Document), a copy of which was attached to his affidavit. In our view, an unsophisticated insured who received the Document could reasonably believe that it contained all the restrictions governing his insurance coverage. The top half of the Document sets forth the names and addresses of United and Willey, the name of the bank, the dates and amounts of coverage, and the premiums for the different components of the coverage. Below this appears the following:

### NOTICE TO DEBTOR

UNITED MERCANTILE LIFE INSURANCE COMPANY, in consideration of the total premium charge shown above and of the signed representations below, certifies that, unless the Company rejects the policy in writing within ninety (90) days following the effective date of insurance shown above, and prior to a claim, you are afforded those coverages for which a specific premium charge has been entered in the above schedule of insurance, *subject to the terms, limitations and conditions of this policy as provided below.*

You are applying for the credit insurance marked above. Your signature means you understand that: (1) You are not eligible for insurance if you have reached your 66th birthday before the inception date of your debt. Your age plus the term of insurance coverage shall not exceed your *71st* birthday. This applies to your joint debtor if you applied for joint life insurance; (2) Your joint debtor is not eligible for disability insurance; (3) You are not eligible for disability insurance if you are not gainfully employed on the effective date of this policy for at least 30 hours per week; (4) The amount or term of insurance may not be the same as the amount or term of your debt.

I hereby certify to the best of my knowledge [that] I have not been attended by a physician or been a patient in a hospital within the 12 months preceding the effective date of insurance shown above. I further certify to the best of my knowledge and belief that I do not have, nor have I had, nor have I been told I have, nor been treated within the last 12 months for: cancer to any part of the body; diabetes; aids

related complex (ARC); acquired immune deficiency syndrome (AIDS); epilepsy; high blood pressure; stroke; tumors of any kind; or any disorders, diseases, ailments or illness of the following: heart; cardiovascular system; lungs; respiratory system; urinary system; bladder; kidney; gall bladder; liver; blood; stomach; intestinal tract; brain or nervous system, except as follows: ——————————— I understand that any false statement, inaccuracy or misrepresentation material to the risk may be used by United Mercantile Life Insurance Company to contest a claim.

(Emphasis added.) The Document does not refer to a separate insurance policy or indicate in any way that there are any "terms, limitations and conditions of this policy" other than those set forth in the Notice to Debtor.

■ {19} Willey's affidavit goes on to state that he did not receive a copy of the Policy before March 18, 1997, and he attaches a copy of his attorney's letter to United of February 14, 1997. The affidavit thus creates a prima facie case of estoppel barring United's limitations defense. This is not to say that Willey must ultimately prevail on the estoppel issue. United may be able to prove to the finder of fact that the Policy had been delivered to Willey earlier than Willey claims or that Willey received other notice that there were additional terms to the Policy. Also, Willey's reliance on the Document would no longer be reasonable once he retained an attorney and the attorney had a reasonable time to request a copy of the Policy from United. *See Advanced Methods, Inc. v. Grain Dealers Mut. Ins. Co.*, 274 F.2d 634, 637 (7th Cir.1960); *Peters v. St. Paul Fire & Marine Ins. Co.*, 213 F.Supp. 441, 442 (S.D.N.Y.1963). But all that Willey needed to do to overcome United's motion was to set forth evidence which, if believed, would rebut United's limitations defense. *See* Rule 1–056(C).

■ {20} Finally, we turn to Willey's estoppel argument predicated on Section 59A–25–7. Willey contends that United's violation of this statute automatically bars reliance on the limitations provision of the Policy. Sub-

sections A, C, and D of Section 59A–25–7 state:

A. All credit life insurance and credit health insurance shall be evidenced by an individual policy, or in the case of group insurance by a certificate of insurance, which individual policy or group certificate of insurance shall be delivered to the debtor.

C. *The individual policy or group certificate shall be delivered to the insured debtor at the time the indebtedness is incurred except as hereinafter in this section provided.*

D. *If the individual policy or group certificate is not delivered to the debtor at the time the indebtedness is incurred,* a copy of the application for such policy or a notice of proposed insurance, signed by the debtor and setting forth the name and home office address of the insurer, the name or names of the debtor, the premium or amount of payment by the debtor, if any, separately for credit life insurance and credit health insurance, the amount, term and a brief description of the coverage provided, shall be delivered to the debtor at the time such indebtedness is incurred. The copy of the application or such notice of proposed insurance shall also refer exclusively to insurance coverage, and shall be separate and apart from the loan, sale or other credit statement of account, instrument or agreement, unless the information required by this subsection is prominently set forth therein. Upon acceptance of the insurance by the insurer and *within thirty (30) days of the date upon which the indebtedness is incurred,* the insurer shall cause the individual policy or group certificate to be delivered to the debtor . The application or notice of proposed insurance shall state that upon acceptance by the insurer, the insurance shall become effective as provided in Section 477 [59A–25–6 NMSA 1978] of this article.

(Emphasis added.) Because Willey obtained an individual policy, not group insurance, the statute required delivery of the Policy to him on June 24, 1991, when he signed the Note, or at least within thirty days of that date.

Hence, if Willey is correct that he did not receive a copy of the Policy until years later, United violated the requirements of Section 59A–25–7.

{21} Nevertheless, the fact that United has violated the statute does not necessarily assist Willey. The statute itself does not set forth the remedy, if any, to which Willey is entitled as a result of United's statutory violation. To be sure, in some circumstances an appropriate remedy for violation of the statute would be to estop the insurer from enforcing exclusions in the policy. Such estoppel would be appropriate if the insured could reasonably have relied on coverage when taking out the loan in connection with which the policy was issued. After all, the purpose of the insurance (at least from the point of view of the borrower) is to protect the borrower or the borrower's estate from financial calamity arising from the borrower's death or disability. The borrower's willingness to commit on the loan may be dependent on the borrower's comfort that credit insurance protects against such misfortune. It may be too late for the borrower to reconsider taking out the loan if restrictions on the insurance coverage are disclosed to the borrower after the borrower has signed off on the loan. Thus, several courts have held that an insurer could not enforce an exclusion in a credit insurance policy when the insurer failed to comply with a statutory requirement of delivery of the policy to the insured at the time credit is extended. *See Robinson v. Volunteer State Life Ins. Co.*, 175 Ga.App. 292, 333 S.E.2d 171 (1985) (insurer cannot enforce exclusion of coverage for disability caused by a pre-existing condition); *Investor's Nat'l Life Ins. Co. v. Norsworthy*, 160 Ga.App. 340, 287 S.E.2d 66 (1981) (same); *Gardner v. League Life Ins. Co.*, 48 Mich.App. 574, 210 N.W.2d 897, 898 (1973) (similar; otherwise, insurer could engage in improper "post-claim underwriting"); *General Motors Acceptance Corp. v. Martinez*, 668 P.2d 498, 501 (Utah 1983) (insurer cannot rely on preexisting illness exclusion in policy); *cf. Norgan v. American Way Life Ins. Co.*, 188 Mich.App. 158, 469 N.W.2d 23, 26 (1991) (insurer could not enforce exclusion on coverage that was not clearly expressed in insurance certificate); *Johnson v. Farmers & Merchants State Bank*, 320 N.W.2d 892, 897 (Minn.1982) (purpose of requiring delivery of policy at the time credit is obtained "is to assure that the borrower will receive the benefit of insurance for which he has applied"); *In re Estate of Johnson*, 195 Neb. 131, 236 N.W.2d 838, 841 (1975) (bank not liable for failure to comply with statutory requirement that insurance policy or certificate be delivered to borrower, because borrowers were aware of limited amount of total insurance coverage).

{22} This rationale does not apply, however, to a limitations-of-actions provision in a policy for credit life and health insurance. It would be remarkable if the borrower's evaluation of whether the policy provided adequate protection against death or disability depended on the period of time within which a claim must be made on the policy. We doubt that the purpose of the statutory requirement of delivery of the policy at the time credit is extended was to alert the debtor-insured to the limitations period before the debtor-insured signed off on a promissory note. The insured is unlikely to be prejudiced by not receiving notice of the limitations period until the day after credit was extended, a month after credit was extended, or, indeed, any time before the insured's cause of action accrued. Thus, although we held above that Willey may well be able to base estoppel on the failure of United to deliver the Policy prior to the expiration of the limitations period, we cannot see an additional valid estoppel argument predicated on violation of the statutory requirement that the Policy be delivered at the time Willey executed the Note.

### III. CONCLUSION

{23} For the above reasons, we reverse the district court's summary judgment in favor of United and remand for further proceedings consistent with this opinion. No costs are awarded.

{24} **IT IS SO ORDERED.**

APODACA and SUTIN, JJ., concur.