The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: **April 25, 2022**

**No. A-1-CA-38977**

**OR&L CONSTRUCTION, L.P.,**

    Plaintiff-Appellant,

**v.**

**MOUNTAIN STATES MUTUAL
CASUALTY COMPANY,**

    Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY
Jarod K. Hofacket, District Judge**

The Furth Law Firm, P.A.
Ben Furth
Paul Hibner
Las Cruces, NM

for Appellant

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Tim L. Fields
Jeremy K. Harrison
Albuquerque, NM

for Appellee

# OPINION

**MEDINA, Judge.**

{1}     Plaintiff OR&L Construction, L.P. (OR&L) appeals the district court's grant of summary judgment in favor of Defendant Mountain States Mutual Casualty Insurance Company (Mountain States). OR&L contends that the district court erred by entering summary judgment in Mountain States' favor and should have granted summary judgment in OR&L's favor; the district court should have applied the "mend the hold" doctrine to prevent Mountain States from changing its reason for denying OR&L's claim for coverage; the district court erred in dismissing OR&L's claims for breach of the implied covenant of good faith and fair dealing and violations of the Unfair Practices Act (UPA), NMSA 1978, § 57-12-2 (2009, amended 2019), and the Unfair Insurance Practices Act (UIPA), NMSA 1978, § 59A-16-20 (1997); the district court erred by holding OR&L had notice of its policy's exclusions as a matter of law; and the district court erred by holding OR&L suffered no damages as a matter of law. OR&L also argues that the district court erred in awarding attorney fees and costs to Mountain States.

{2}     We affirm and clarify two aspects of the implied covenant of good faith and fair dealing. First, we hold that the reasonable expectations doctrine is a judicial doctrine, and an insurer does not violate the implied covenant if it does not consider an insured's reasonable expectations of coverage when processing claims. Second,

we hold that an insurer's good faith duty to investigate ends after it determines a claim is not covered under the terms of an insured's policy, and thus a failure to investigate beyond the terms of the policy does not violate the implied covenant.

**BACKGROUND**

{3} OR&L is a construction business that conducts, among other things, roof repair, including "torch-down" roofing—a technique which uses a flaming torch to heat and seal tar paper onto a roof. OR&L sought a general commercial liability policy through insurance broker Pat Campbell Insurance, LLC (Pat Campbell) that would cover all its operations, including torch-down roofing. Mountain States does not sell insurance directly to the public, and instead authorizes brokers, like Pat Campbell, to sell its insurance products. Through Pat Campbell, OR&L obtained a Mountain States general commercial liability insurance policy.

{4} In February 2016, Mountain States transmitted a complete copy of OR&L's policy to Pat Campbell. The complete policy contained two exclusions, "Designated Work" and "Designated Ongoing Operations," which specifically precluded coverage for damage caused by torch-down roofing. Pat Campbell then sent a ten-page "Commercial Package Policy" document to OR&L. The ten-page document contained a two-page forms list which identified several forms included in OR&L's policy, including several exclusions. Pat Campbell did not read the complete policy and failed to discover the torch-down roofing exclusion. OR&L reviewed the ten-

page policy document and the list of forms identifying the exclusions, but believed it acquired coverage for torch-down roofing based on Pat Campbell's representations.

{5} In March 2016, a fire occurred at a home while OR&L was performing torch-down roofing. OR&L submitted a claim for coverage to Mountain States, believing that its policy covered damage caused by such an incident. Shortly after, OR&L participated in two phone calls with Mountain States claims adjuster Kimberly Kroner to discuss the fire. During the first call, OR&L informed Ms. Kroner that the fire occurred while OR&L was performing torch-down roofing, and Ms. Kroner replied that OR&L's policy contained a torch-down roofing exclusion. OR&L informed Ms. Kroner it was unaware the policy excluded torch-down roofing and that it had only received a ten-page policy document from Pat Campbell. Ms. Kroner ended the first call and discussed the exclusion with Mountain States' chief underwriting officer, who informed her the exclusion was valid. Ms. Kroner then made a second call to inform OR&L that the policy exclusion was valid and that OR&L had no coverage for a fire caused by torch-down roofing. A week later, Ms. Kroner sent OR&L a letter officially denying coverage due to the torch-down roofing exclusion. Mountain States did not investigate whether Pat Campbell had provided OR&L with a complete copy of the policy and believed that OR&L did not

have the complete policy. OR&L subsequently sued Mountain States and Pat Campbell in May 2016.

{6}  In August 2016, OR&L received a demand for payment from the homeowner's insurance company. Pat Campbell purchased the homeowner's demand through a July 2017 settlement agreement. In July 2018, OR&L and Pat Campbell entered into a second settlement agreement in which Pat Campbell agreed in part to pay OR&L's attorney fees related to litigation between Pat Campbell and OR&L, and extinguish the homeowner's demand in exchange for OR&L releasing all its claims against Pat Campbell. In exchange, OR&L agreed not to pursue further legal action against Pat Campbell for any cause of action arising from the fire.

{7}  After settling with Pat Campbell, OR&L filed a third amended complaint which solely asserted claims against Mountain States. OR&L sought relief for alleged violations of the UPA, breach of contract and breach of the implied covenant of good faith and fair dealing, and violations of the UIPA. OR&L also sought reformation of OR&L's policy to strike the torch-down roofing exclusion and damages.

{8}  Mountain States answered the complaint and asserted a counterclaim against OR&L, requesting a declaratory judgment due to the policy's exclusion of losses arising from torch-down roofing. In support of its counterclaim, Mountain States alleged that OR&L had actual or constructive notice of the exclusion because the

4

complete policy had been provided to Pat Campbell, and inquiry notice of the torch-down roofing exclusion from the ten-page policy document Pat Campbell provided to OR&L. OR&L subsequently filed a motion in limine asserting that Mountain States mended its hold because Mountain States had initially denied OR&L's coverage claim due to the torch-down roofing exclusion, not OR&L's notice of the exclusion.

{9}     The parties filed and briefed several motions for summary judgment. In a detailed order, the district court granted summary judgment to Mountain States, finding that Mountain States had disclosed the torch-down roofing exclusion to OR&L. The district court found that the ten-page policy document OR&L received reasonably informed OR&L of its rights and obligations and that there were exclusions in the policy. Thus, per *Young v. Seven Bar Flying Service, Inc.*, 1984-NMSC-069, 101 N.M. 545, 685 P.2d 953, OR&L had notice of the exclusions as a matter of law, and the documents supplied to OR&L would allow Mountain States to rely on the torch-down roofing exclusion.

{10}     The district court also found that OR&L's release of Pat Campbell was an alternate basis for granting summary judgment to Mountain States. OR&L's expectation of coverage was directly attributable to Pat Campbell, not Mountain States, and Mountain States could only be held vicariously liable for Pat Campbell's acts and omissions. The district court found that because Pat Campbell was acting

5

as an agent for Mountain States when it delivered the policy to OR&L and OR&L released Pat Campbell, no liability could be imputed to Mountain States for Pat Campbell's acts or omissions.

{11} The district court also dismissed OR&L's claims for breach of the implied covenant of good faith and fair dealing and violations of the UPA and UIPA. Regarding OR&L's expectations of coverage, the district court found that the reasonable expectations doctrine is a judicial remedy, and that Mountain States therefore had no duty to consider OR&L's reasonable expectations of coverage. The district court also found that Mountain States did not breach the implied covenant or violate its duty to investigate the cause of the fire because the scope of an insurer's investigation is limited to the facts and circumstances of the loss and does not encompass the insured's expectations of coverage. Additionally, the district court found Mountain States had no obligation to attempt to settle due to its good faith belief that OR&L's policy did not cover its loss from the fire.

{12} Regarding OR&L's motion in limine, the district court found that Mountain States did not mend its hold. The district court found that the doctrine did not preclude Mountain States from further explaining the basis of its claims decision or responding to legal arguments and that explaining how a policy exclusion was enforceable was not mending the hold.

6

**{13}** Because Pat Campbell had purchased the homeowner's claim against OR&L, the district court found that OR&L was in the position it expected to be when it sought coverage for torch-down roofing and suffered no damages. Finally, the district court found that OR&L either chose not to do available work due to the litigation, which would be a failure to mitigate, or there was no work available meaning there could be no lost profits. Because the availability of work and whether that work was declined was in dispute, the district court denied summary judgment on the issue of mitigation, but noted that its other rulings fully resolved the case and no issues were preserved for trial.

**{14}** In a separate order, the district court found that Mountain States was entitled to its fees and costs and overruled all of OR&L's objections to Mountain States' cost bill, awarding Mountain States $53,465.82 in fees and costs. This appeal followed.

**DISCUSSION**

**I.    Summary Judgment**

**{15}** "Our review on a grant of summary judgment is de novo." *Salas v. Mountain States Mut. Cas. Co.* (*Salas II*), 2009-NMSC-005, ¶ 12, 145 N.M. 542, 202 P.3d 801 (internal quotation marks and citation omitted). "Summary judgment is only appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Id.* (internal quotation marks and citation omitted). "Moreover, the existence of a duty is a question of law, which we review

de novo." *Id.*; *see Azar v. Prudential Ins. Co. of Am.*, 2003-NMCA-062, ¶ 43, 133 N.M. 669, 68 P.3d 909.

## A.     The Torch-Down Roofing Exclusion

{16}     Much of this case hinges on whether the torch-down roofing exclusion in OR&L's policy is enforceable. OR&L contends that the exclusion is not enforceable because OR&L applied for torch-down roofing coverage; OR&L was informed that the policy covered all its operations; Pat Campbell testified that it never would have thought the policy contained an exclusion for coverage it had applied for; the policy document identified itself as the policy and contained material terms; and the ten-page policy document it received represented it covered OR&L's business operations. OR&L also contends that the district court erred in determining it had notice of the exclusion as a matter of law because no reasonable person would know that OR&L's policy contained a torch-down roofing exclusion, OR&L applied for and expected it would receive torch-down roofing coverage, and Pat Campbell did not believe that there would be an exclusion for coverage it had applied for. Based on the foregoing, OR&L claims it had reasonable expectations of coverage and the policy should be reformed to eliminate the torch-down roofing exclusion. We disagree and explain.

{17}     "In New Mexico, if an insured is supplied with a copy of his policy or a memorandum of insurance, then he may rely on the document so supplied to inform

8

him of all his rights and duties under the insurance contract." *Young*, 1984-NMSC-069, ¶ 10. "If an insurer gives the impression that all of the material provisions of an insurance contract are contained in a document furnished to the insured by the insurer, then the insurer cannot invoke provisions in the original which were not included in the copy given to the insured." *Id.* "However, failure of an insurer to provide an individual with a copy of an applicable insurance policy will not, in every case, release the individual from the . . . provisions in the policy." *Id.*

{18}    New Mexico courts have examined many situations similar to the present case to determine whether a policy exclusion may be enforced. Two cases are particularly helpful in guiding our analysis, with the first being *Stock v. ADCO General Corp.*, 1981-NMCA-075, ¶ 2, 96 N.M. 544, 632 P.2d 1182. In *Stock*, the plaintiff purchased insurance through a broker to cover his tractor-trailer fleet. The policy, as issued, was not what the plaintiff requested and was not what was quoted to the broker. *Id.* ¶ 3. The policy contained a "named driver endorsement" that had not been requested or discussed and was not on the application. *Id.* The insurance company knew this limitation was unusual and provided the broker with special stickers to attach to the policy to warn the insured of the endorsement and its limited coverage, but the broker failed to attach the stickers to the plaintiff's policy. *Id.*

{19}    Neither the broker nor the plaintiff read the policy. *Id.* ¶ 4. Therefore, neither broker nor plaintiff were aware of the named driver endorsement limitation, and that

9

one of the plaintiff's drivers was not on that list. *Id.* The driver who was not on the list was later involved in a tractor accident, and the plaintiff sued after he was denied coverage for the accident. *Id.* ¶¶ 4-5. The plaintiff admitted he had not read the policy, but argued that the limitation did not apply because he was never made aware of the limitation and he had reason to expect the policy would provide coverage based on similar policies he had received. *Id.* ¶ 7. This Court held that the plaintiff's failure to read the policy was not contributory negligence; it was reasonable for the plaintiff to expect the policy would contain the coverage he requested; the plaintiff was not advised by the broker that the policy was different; and the plaintiff was not bound to read the policy word for word. *Id.* ¶¶ 10-11. This Court ultimately did not reform the policy, but only declined to do so because the policy had already expired. *See id.* ¶ 25.

{20}     The second guiding case is *Young*. In *Young*, the plaintiff purchased an aircraft that he leased to Seven Bar Flying Service (Seven Bar). 1984-NMSC-069, ¶ 1. Seven Bar insured the aircraft on its master insurance policy with National Union (the insurance company). *Id.* The plaintiff was supplied with a certificate of insurance informing him that the insurance company had insured the aircraft. *Id.* ¶ 11. The aircraft was subsequently stolen and the plaintiff sued Seven Bar for negligence and breach of the lease agreement, as well as the insurance company for wrongful refusal to pay his claim on the stolen aircraft. *Id.* ¶ 1. The plaintiff contended that the

10

insurance company should be estopped from asserting the time-to-sue limitation in Seven Bar's master policy because the plaintiff was never provided with a copy of the policy. *Id.* ¶ 8.

{21} The New Mexico Supreme Court disagreed, holding that the insurance company could assert the time-to-sue limitation. *Id.* ¶ 12. The Court stated that "[i]f an insurer gives the impression that all of the material provisions of an insurance contract are contained in a document furnished to the insured by the insurer, then the insurer cannot invoke provisions in the original that were not included in the copy given to the insured." *Id.* ¶ 10. However, the plaintiff had been provided with a certificate of insurance, which stated "[f]or particulars concerning the limitations, conditions and terms of the coverage you are referred to the original [p]olicy or [p]olicies in the possession of the [a]ssured." *Id.* ¶ 11. Therefore, the insurance company was not estopped from asserting the time-to-sue limitation. *Id.* ¶ 12.

{22} "[T]he critical difference appears to be whether the document supplied to the insured may have suggested that all the restrictions of the policy were set forth in the document." *Willey v. United Mercantile Life Ins. Co.*, 1999-NMCA-137, ¶ 18, 128 N.M. 98, 990 P.2d 211. For that reason, we conclude that this case is more like *Young* than *Stock*. The forms schedule in the ten-page policy document OR&L received states that there are several terms and conditions, not just policy exclusions to OR&L's coverage, not contained within the ten-page document. The "Additional

11

Property Coverage" and "Additional General Liability Coverages" forms also direct the insured to "[r]efer to captioned endorsements for applicable limits and deductibles" that are not listed in the ten-page document itself. Thus, the ten-page policy document notifies the insured that there are limits and restrictions to OR&L's coverage that are fully explained within the complete policy.

{23}  To the extent OR&L contends that *Salas II*, 2009-NMSC-005, and *Salas v. Mountain States Mutual Casualty Co.* (*Salas I*), 2007-NMCA-161, 143 N.M. 113, 173 P.3d 35, prevent the exclusion from being enforceable, we disagree. It is true that, under both *Salas* cases, insurers have a primary responsibility to provide insureds with reasonable notice of the contents of their policy by providing a copy of the policy or some other documentation of its terms and that a failure to do so precludes the insurer from relying on an undisclosed provision to limit coverage. *Salas II*, 2009-NMSC-005, ¶ 13; *Salas I*, 2007-NMCA-161, ¶ 38. But Mountain States did not fail to provide OR&L with reasonable notice of the contents of its policy because the ten-page policy document indicates that it does not contain the policy's complete terms and conditions. We, therefore, affirm the district court's grant of summary judgment in Mountain States' favor because OR&L had notice of the torch-down roofing exclusion as a matter of law and Mountain States may rely on the exclusion to deny OR&L's claim. *Compare Young*, 1984-NMSC-069, ¶ 11 (holding that the policy limitation was enforceable because the insured received a

12

"Certificate of Insurance" that directed him to refer to the original policy for the complete terms and conditions of coverage (internal quotation marks omitted)), *with Willey*, 1999-NMCA-137, ¶ 18 (holding that the policy limitation was not enforceable because the document the insured received did not mention any policy restrictions).

**B.      The Release of Pat Campbell**

{24}      "New Mexico law permits an insured to sue an agent for failing to obtain a requested policy." *Wilson v. Berger Briggs Real Est. & Ins., Inc.*, 2021-NMCA-054, ¶ 9, 497 P.3d 654. "Liability may be predicated either upon the theory that the defendant is the agent of the insured and has breached a contract to procure a policy or insurance, or that he owes a duty to his principal to exercise reasonable skill, care, and diligence in securing the insurance requested and negligently failed to do so." *Id.* (alterations, internal quotation marks, and citation omitted).

{25}      Mountain States argues that OR&L and Pat Campbell's settlement agreement is an alternative basis for affirming summary judgment in its favor. Mountain States asserts that Pat Campbell was acting as an insurance broker for OR&L when it delivered the policy to OR&L, and thus was acting as OR&L's agent at that time. Because any liability of Mountain States for Pat Campbell's failures is vicarious liability, Mountain States argues that OR&L's release of Pat Campbell releases all claims against Mountain States derived from Pat Campbell's actions. OR&L

13

disagrees, arguing that the settlement does not release or involve Mountain States and only provides for payment of attorney fees incurred in pursuing claims against Pat Campbell, extinguishes the homeowner's claims, and amends OR&L's complaint to remove Pat Campbell. OR&L also argues that its claims against Mountain States are not based on vicarious liability.

{26}   While we agree that some of OR&L's claims against Mountain States are based on direct liability, we determine that its release of Pat Campbell releases any claims against Mountain States derived from Pat Campbell's actions or omissions. "The rule under general principles of insurance law is that an insurance broker represents the insured." *Barth v. Coleman*, 1994-NMSC-067, ¶ 23, 118 N.M. 1, 878 P.2d 319. Some cases have held the opposite, which illustrates the challenge of applying general agency principles to cases in which insurance is sold through brokers. *See id.*

{27}   But regardless of Pat Campbell's agency relationship to either Mountain States or OR&L, Pat Campbell has been discharged from this lawsuit. Thus, if we assume without deciding that Pat Campbell was acting as an agent of OR&L, OR&L has no recourse against Pat Campbell due to the settlement agreement. In contrast, if we assume without deciding that Pat Campbell was acting as an agent of Mountain States, OR&L has no recourse against Mountain States for Pat Campbell's actions that can be imputed to Mountain States because "with the release of an agent, the

14

means by which liability can be imputed to the principal is destroyed." *Valdez v. R-Way, LLC*, 2010-NMCA-068, ¶ 4, 148 N.M. 477, 237 P.3d 1289. Thus, Mountain States cannot be held vicariously liable for the acts and omissions of Pat Campbell. *See Kinetics, Inc. v. El Paso Prods. Co.*, 1982-NMCA-160, ¶ 29, 99 N.M. 22, 653 P.2d 522 ("Vicarious liability is based on a relationship between the parties . . . under which it has been determined as a matter of policy that one person should be liable for the act of the other." (internal quotation marks and citation omitted)).

{28}     We therefore hold that OR&L's release of Pat Campbell is alternative basis for affirming the district court's grant of summary judgment to Mountain States regarding any actions of Pat Campbell that could be imputed to Mountain States. We now address OR&L's claims for direct liability.

## C.     The Implied Covenant of Good Faith and Fair Dealing

{29}     "Under the common law, all insurance contracts include an implied covenant of good faith and fair dealing that the insurer will not injure its policyholder's right to receive the full benefits of the contract." *Sherrill v. Farmers Ins. Exch.*, 2016-NMCA-056, ¶ 34, 374 P.3d 723 (internal quotation marks and citation omitted). "[T]he implied covenant of good faith and fair dealing cannot be used to override express provisions in a written contract." *Smoot v. Physicians Life Ins. Co.*, 2004-NMCA-027, ¶ 10, 135 N.M. 265, 87 P.3d 545. "Thus, it is breached only when a

15

party seeks to prevent the contract's performance or to withhold its benefits from the other party." *Azar*, 2003-NMCA-062, ¶ 51.

{30}     OR&L argues that Mountain States breached the implied covenant of good faith and fair dealing in three ways. First, OR&L argues that, per *Barth*, 1994-NMSC-067, insurers have a nondelegable duty to ensure the insured's reasonable expectations of coverage when denying coverage due to a policy exclusion and that Mountain States' failure to consider its reasonable expectations violates the UIPA. Second, OR&L argues that Mountain States violated both the UIPA and its nondelegable duty to investigate by not investigating the cause of the fire, or whether OR&L had notice of the torch-down roofing exclusion. Third, OR&L argues that Mountain States did not attempt to resolve OR&L's claims in good faith in violation of the UIPA. We disagree, and we explain.

## 1.     The Reasonable Expectations Doctrine

{31}     In *Barth*, the New Mexico Supreme Court held that "[w]hen deciding whether an exclusionary clause is effective to nullify coverage under an insurance policy, we give consideration to the reasonable expectations of the insured." 1994-NMSC-067, ¶ 14. Nothing in *Barth* requires the insurer to consider the insured's reasonable expectations. Rather, the "reasonable expectations" doctrine is a judicial doctrine applied by the courts when interpreting an insurance policy. *See Rummel v. Lexington Ins. Co.*, 1997-NMSC-041, ¶ 22, 123 N.M. 752, 945 P.2d 970 ("The

16

court's construction of an insurance policy will be guided by the reasonable expectations of the insured."). OR&L identifies no authority, and we are aware of none, that requires an insurer to consider the reasonable expectations of the insured when determining whether coverage applies to a particular claim. Stated differently, the doctrine guides construction of a policy in circumstances where such is at issue or where given provisions require a court to ascertain their meaning. But to reiterate, it is not a doctrine applicable to insurers themselves, nor does it govern what insurers must cover in an insurance policy.

**{32}** As such, the "reasonable expectations" doctrine is not applicable in this case. The doctrine may be invoked when (1) "the language of an insurance policy or representations of [an] insurance company lead [the] insured to reasonably expect coverage"; (2) the language of the policy is ambiguous; or (3) "when the dynamics of the insurance transaction make way for its application." *Rehders v. Allstate Ins. Co.*, 2006-NMCA-058, ¶ 33, 139 N.M. 536, 135 P.3d 237 (internal quotation marks and citation omitted). However, "[u]nambiguous insurance policy exclusions are to be enforced unless they are contrary to law or public policy." *Berlangieri v. Running Elk Corp.*, 2002-NMCA-046, ¶ 15, 132 N.M. 92, 44 P.3d 538. The torch-down roofing exclusion is not ambiguous, nor is it contrary to law or public policy. It is true that the doctrine of reasonable expectations is not limited to disputed policy language and that the dynamics of the insurance transaction often affect the insured's

17

reasonable expectations. *Barth*, 1994-NMSC-067, ¶ 15. However, unlike the defendant in *Barth*, OR&L had notice of the torch-down roofing exclusion from the ten-page policy document, and therefore Mountain States could rely on the exclusion to deny OR&L's claim. *See id.* ¶¶ 18-20 (holding that the defendant had a reasonable expectation of coverage because the insured was (1) uninformed about the nature of what he purchased, (2) did not receive the policy before the incident leading to a claim for coverage arose, and (3) had no notice the policy contained an exclusion precluding coverage for the incident).

{33}     We therefore affirm the district court's dismissal of OR&L's claims for violation of the implied covenant of good faith and fair dealing regarding the reasonable expectations doctrine. We also affirm the dismissal of OR&L's UIPA claims regarding its reasonable expectations because the UIPA does not obligate insurers to consider an insured's reasonable expectations of coverage. *See generally* § 59A-16-20.

## 2.     The Duty to Investigate

{34}     Insurers are required to promptly investigate and process an insured's claim for coverage. *See* § 59A-16-20(C). "In this context, insurer conduct is measured by basic standards of competency and the insurer is charged with knowledge of the duty owed to its insured." *Sherrill*, 2016-NMCA-056, ¶ 39 (omission, internal quotation marks, and citation omitted).

**{35}**    There is no evidence in the record that Mountain States violated its duty to investigate or otherwise sought to prevent the policy's performance or withhold its benefits. OR&L's policy is clear that there is no coverage for torch-down roofing. After OR&L submitted its claim for coverage, Mountain States inquired as to the cause of the fire, informed OR&L that its policy did not cover torch-down roofing, and confirmed that the policy exclusion still precluded coverage after OR&L expressed that it was unaware of the exclusion. Thus, once Mountain States performed its investigation and determined OR&L lacked coverage for the fire, there was no other performance due under the contract.

**{36}**    To the extent OR&L argues that Mountain States violated a nondelegable duty to investigate whether OR&L had notice of the torch-down roofing exclusion under the *Salas* cases, we disagree. As we have explained, neither *Salas* case imposes such a duty on insurers. The *Salas* cases only require insurers to give reasonable notice of the contents of their policy, and Mountain States met that requirement. *See Salas I*, 2007-NMCA-161, ¶ 38; *Salas II*, 2009-NMSC-005, ¶ 13. Mountain States had no duty to consider OR&L's reasonable expectations of coverage when processing its claim, had no duty to investigate the fire once it determined OR&L's claim was excluded from coverage, and had no duty to investigate whether OR&L had notice of the torch-down roofing exclusion.

{37}     We therefore affirm the district court's dismissal of OR&L's claims for violation of the implied covenant of good faith and fair dealing regarding the duty to investigate. Based on the forgoing, we also affirm the dismissal of OR&L's UIPA claims related to its reasonable expectations and Mountain States' duty to investigate. The UIPA does not require insurers to investigate the cause of an incident leading to a claim when there is no coverage. *See generally* § 59A-16-20.

**3.     Resolution of OR&L's Claims**

{38}     Finally, we briefly address OR&L's assertion that Mountain States failed to attempt in good faith to resolve OR&L's claims and the claims against it. The UIPA requires insurers to attempt "in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear." Section 59A-16-20(E). However, an insured cannot raise a claim of bad faith based on an insurer's failure to pay a covered claim unless the insured can establish that coverage exists. *Haygood v. United Servs. Auto. Ass'n*, 2019-NMCA-074, ¶ 21, 453 P.3d 1235. OR&L has failed to establish coverage for claims regarding torch-down roofing; therefore, OR&L's argument that Mountain States did not attempt to resolve its claim or any other claims in good faith is unavailing. Accordingly, we affirm the dismissal of OR&L's claims that Mountain States violated the implied covenant of good faith and fair dealing or the UIPA by failing to promptly effectuate claims resolution.

## D. Mountain States' Alleged Misrepresentations

**{39}** Under the UPA, an unfair or deceptive practice is "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services or in the extension of credit or in the collection of debts by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person." Section 57-12-2(D). To establish a UPA violation, a plaintiff must show four elements: "(1) the defendant made a false statement, (2) the defendant made the statement in connection with the sale of services and knew that the statement was false, (3) the defendant made the statement in the regular course of trade or commerce, and (4) the statement was one which may, tends to, or does deceive or mislead any person." *Dellaira v. Farmers Ins. Exch.*, 2004-NMCA-132, ¶ 20, 136 N.M. 552, 102 P.3d 111 (alteration, omission, internal quotation marks, and citation omitted). "The 'knowingly made' requirement is met if a party was actually aware that the statement was false or misleading when made, or in the exercise of reasonable diligence should have been aware that the statement was false or misleading." *Stevenson v. Louis Dreyfus Corp.*, 1991-NMSC-051, ¶ 17, 112 N.M. 97, 811 P.2d 1308.

**{40}** OR&L argues that Mountain States made several material misrepresentations that merit reversal on different grounds. OR&L appears to contend that Mountain

21

States violated the UPA by (1) making material misrepresentations in its denial letter, and (2) that the ten-page policy document deceived both Pat Campbell and OR&L. OR&L similarly argues that Mountain States violated the UIPA by misrepresenting OR&L's policy provisions in its denial letter based on the torch-down roofing exclusion, and that the denial letter failed to address OR&L's constructive notice of the exclusion in violation of the UIPA, which parallels OR&L's argument that Mountain States mended its hold by asserting OR&L's actual and constructive notice of the torch-down roofing exclusion in defending this litigation.

{41}    We disagree. OR&L fails to point us to any record evidence demonstrating that Mountain States made any false statements or material misrepresentations. As we have determined, Mountain States is entitled to rely on the torch-down roofing exclusion because the ten-page document OR&L received contained notice of that exclusion. Mountain States cited the exclusion when denying OR&L's claim and did not make a false statement or misrepresent any policy provisions when denying coverage. Thus, OR&L's UPA claims must fail because it cannot show the first element required to establish a violation of the UPA. *See* § 57-12-2(D). We similarly affirm the dismissal of OR&L's UIPA claims related to Mountain States' alleged material misrepresentations, because OR&L has failed to establish that Mountain

22

States misrepresented facts or policy provisions in violation of the UIPA. *See* § 59A-16-20(A).

**{42}** Finally, based on the forgoing, we conclude that the mend the hold doctrine is not applicable to Mountain States' conduct in defending this case. The mend the hold doctrine precludes an insurer from asserting one reason to deny coverage of a claim and then raising a different reason for denial as a defense once litigation occurs. *See Irwin v. Sovereign Camp of Woodmen of the World*, 1910-NMSC-023, ¶ 4, 15 N.M. 365, 110 P. 550. Mountain States has consistently asserted its belief that the torch-down roofing exclusion precludes coverage, both before and throughout the duration of this lawsuit. Ms. Kroner expressed that the exclusion precluded coverage for the fire when she spoke to OR&L, Mountain States' denial letter relies on the torch-down roofing exclusion, and Mountain States asserted the exclusion as a counterclaim. While Mountain States explains its reliance on the exclusion in more detail in defending this lawsuit, we are aware of no authority, and OR&L cites none, that precludes an insurer from explaining the basis of its claims decision and asserting the insured's notice of that exclusion in response to litigation.

**{43}** As expressed above, whether an insured has notice is a factual and legal question to be decided by the courts, not a claims denial question an insurer must consider when denying a claim for coverage. We therefore determine that Mountain

States did not mend its hold and affirm the district court's order denying OR&L's motion in limine regarding the mend the hold doctrine.

**E.     Damages and Mitigation**

{44}    "In an ordinary lawsuit, denial of a motion for summary judgment is not appealable." *Doe v. Leach*, 1999-NMCA-117, ¶ 12, 128 N.M. 28, 988 P.2d 1252. "Where a motion for summary judgment is based solely on a purely legal issue which cannot be submitted to the trier of fact, and the resolution of which is not dependent on evidence submitted to the trier of fact . . . the issue should be reviewable on appeal from the judgment." *Gallegos v. State Bd. of Educ.*, 1997-NMCA-040, ¶ 10, 123 N.M. 362, 940 P.2d 468.

{45}    Here, the district court found that OR&L suffered no damages in its order denying Mountain States' motion for summary judgment based on OR&L's failure to mitigate. OR&L challenges the district court's finding that it suffered no damages as a matter of law. However, because Mountain States' motion for summary judgment depended on an issue that needed resolution by the trier of fact—the availability of work and whether such work was declined—there is no appealable finding regarding damages.

{46}    Regardless, it is unnecessary for us to review the issue of damages to resolve this appeal. Because we have determined that Mountain States was legally entitled to rely on the torch-down roofing exclusion to deny OR&L's claims, whether OR&L

has suffered a monetary loss arising from the fire is irrelevant because Mountain States is not liable for that loss. It is not our practice to address issues unnecessary for the disposition of an appeal. *See, e.g.*, *Sandoval v. Cortez*, 1975-NMCA-088, ¶ 16, 88 N.M. 170, 538 P.2d 1192 ("Since we are affirming this case on points regarding liability it will be unnecessary for us to review the point regarding damages.").

{47}     It is true that a plaintiff may seek recovery under the UPA without proof of actual damages. *See* NMSA 1978, § 57-12-10(B) (2005) (authorizing recovery of "actual damages or the sum of one hundred dollars ($100), whichever is greater"). But because OR&L's UPA claims fail, we similarly need not address OR&L's claim for damages under the UPA. We therefore decline to further address the issue of damages.

## II.     Mountain States' Cost Bill

{48}     "In all civil actions or proceedings of any kind, the party prevailing shall recover his costs against the other party unless the court orders otherwise for good cause shown." NMSA 1978, § 39-3-30 (1966). Similarly, our rules state "[u]nless expressly stated either in a statute or in these rules, costs . . . shall be allowed to the prevailing party unless the court otherwise directs." Rule 1-054(D)(1) NMRA. As the prevailing party, Mountain States is "entitled to a presumption that it should be awarded costs." *Key v. Chrysler Motors Co.*, 2000-NMSC-010, ¶ 6, 128 N.M. 739,

25

998 P.2d 575. The burden is on the losing party to demonstrate that an award of costs would be unjust or that other circumstances justify a denial or reductions of costs. *Apodaca v. AAA Gas. Co.*, 2003-NMCA-085, ¶ 103, 134 N.M. 77, 73 P.3d 215. "The trial court has discretion in assessing costs, and its ruling will not be disturbed on appeal unless it was an abuse of discretion." *Key*, 2000-NMSC-010, ¶ 7 (internal quotation marks and citation omitted).

{49} OR&L argues that the district court abused its discretion in awarding costs in two ways. First, it asserts the district court erred in awarding costs for an expedited deposition transcript of OR&L's expert because the district court did not cite the opinions in that transcript in its summary judgment order. Second, OR&L argues the district court should not have awarded expert costs for Mountain States' expert because Mountain States sought non-recoverable costs, the expert's rates were not reasonable rates for Southern New Mexico, the bill included block billing, and the district court likewise did not cite that expert's opinion in its summary judgment order.

{50} We disagree. The district court entered a detailed twelve-page order awarding fees and costs to Mountain States. Specifically, the district court found that both experts were necessary to litigation, OR&L did not support its argument that Defendants' expert fees or block billing was unreasonable, and that staff expenses

26

and document production fees are not unrecoverable costs if those fees are assessed in preparation for the creation of an expert's opinion.

{51} The district court affirmatively explained its reasons for awarding fees and costs in a manner that is not contrary to logic or reason. *See Stansell v. New Mexico Lottery*, 2009-NMCA-062, ¶ 14, 146 N.M. 417, 211 P.3d 214 ("A trial court abuses its discretion when its decision is contrary to logic and reason." (internal quotation marks and citation omitted)). Further, OR&L does not point us to any authority or evidence in the record demonstrating that the district court's award of Mountain States' costs was in error. We therefore cannot say the district court abused its discretion in awarding costs for the expedited deposition transcript and Mountain States' expert.

{52} Finally, OR&L argues that the district court failed to consider the chilling effect that Mountain States' cost bill would have on future UPA/UIPA claimants. This assertion is contrary to the plain language of the UPA and UIPA. The UPA explicitly directs the district court to award fees and costs to a party charged with a violation of the act if it determines the claim is groundless. Section 57-12-10(C). Similarly, under the UIPA, "[c]osts shall be allowed to the prevailing party unless the court otherwise directs." NMSA 1978, § 59A-16-30 (1990); *see H-B-S P'ship v. AIRCOA Hosp. Servs., Inc.*, 2008-NMCA-013, ¶ 28, 143 N.M. 404, 176 P.3d 1136

(recognizing that staff expenses and document-production costs incurred in connection with the creation of an expert's opinion are allowable).

{53} Therefore, there is no chilling effect implicated in an award of costs to UPA or UIPA defendants, and OR&L's argument is without merit. *See, e.g.*, *Key*, 2000-NMSC-010, ¶ 16 (concluding that the Legislature did not intend to limit costs to prevailing defendants based on a theoretical chilling effect based on the language of the Motor Vehicle Dealers Franchising Act).

**CONCLUSION**

{54} For the above reasons, we affirm the district court's order granting summary judgment in favor of Mountain States and dismissing OR&L's claims for violations of the implied covenant of good faith and fair dealing, the UPA, and the UIPA. We also affirm the district court's order awarding costs to Mountain States.

{55} **IT IS SO ORDERED.**

_____
**JACQUELINE R. MEDINA, Judge**

**I CONCUR:**

_____
**J. MILES HANISEE, Chief Judge**

**KRISTINA BOGARDUS, Judge (specially concurring).**

28

**BOGARDUS, Judge (specially concurring).**

{56} I concur in the result reached by the majority, except for the section addressing the implied covenant of good faith and fair dealing. Because OR&L in this instance received the coverage contracted for, it is my view that the Court need not reach any arguments related to this issue. As the majority states "the implied covenant of good faith and fair dealing cannot be used to override express provisions in a written contract," *Smoot*, 2004-NMCA-027, ¶ 10, and therefore this implied covenant is only breached "when a party seeks to prevent the contract's performance or to withhold its benefits from the other party." *Azar*, 2003-NMCA-062, ¶ 51. It is clear that the coverage purchased by OR&L in this case included express provisions that limited coverage. And there are no facts to support a contention that Mountain States unreasonably withheld its coverage decision or failed to properly investigate the claim, which might support a claim for lack of good faith and fair dealing even in light of the policy exclusions. *See Haygood*, 2019-NMCA-074, ¶¶ 22-23 (noting that a bad faith claim need not depend on the existence of coverage but may also arise where the insurer failed to deal fairly in claims handling). Because it is unnecessary to discuss the implied covenant of good faith and fair dealing to reach this Court's decision here, I do not concur in this portion of the opinion.

_____
**KRISTINA BOGARDUS, Judge**

29